# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-02-00401-CV

---

**In the Matter of A.T.H.**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT**
**NO. J-21,779, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

---

## O P I N I O N

A.T.H. was adjudicated delinquent for possession of marihuana within 1,000 feet of a school and placed on probation.  *See* Tex. Health & Safety Code Ann. '' 481.121, .134 (West Supp. 2003); Tex. Fam. Code Ann. ' 54.03 (West 2002).  He appeals, contending that the district court erred in denying his motion to suppress the State=s evidence because the police officer had neither reasonable suspicion nor probable cause to conduct the pat-down during which the drugs were discovered.  We will reverse and remand.

Austin Police Officer Joe Chavez testified that he was stationed at Travis High School in January 2002.  At about 9:40 a.m., he received a phone call from a caller who refused to give his name and told Chavez that he Awas near a business or at the business@ located about twenty-five feet from the school=s eastern fence line.  The unidentified caller complained that four juveniles who he assumed were Travis High School students were smoking marihuana behind the business.  Chavez testified that the caller

said, "[A]s we're speaking they're walking off and the only person I could really identify for you is a black male wearing a Dion Sanders football jersey." Chavez walked into the eastern parking lot to see if he could intercept the students, and "the only person I saw was, you know, a black man wearing a . . . Dion Sanders football Jersey walking onto the parking lot which is our campus." When Chavez approached, the man, identified at the hearing as A.T.H., was cooperative and told Chavez his name and birth date. Chavez was wearing his uniform, badge, and gun at the time. Chavez did not know A.T.H., so, "For my safety and his safety I asked him—I told him that I was going to, you know, do a pat-down for officer's safety and for his safety." Chavez told A.T.H., "I'm just going to need you to put your hands on top of your head or behind your head," and "[r]ight before he did, I hadn't even touched him yet, he reached in his front left pocket and retrieved a clear plastic baggie which contained a green leafy substance." Chavez said, "I was directly behind him – so when he did he had the clear plastic baggie cuffed inside of his hand right here behind his head where it was actually right in front of my eyes at that time." The baggie contained marihuana. On cross-examination, Chavez testified, "[I]t wasn't a search, it's what we call a pat-down just for weapons." He said, "As soon as I, you know, identified him, I told him I was going to do a pat-down, to put his hands back behind his head." Chavez arrested A.T.H., who attended high school elsewhere, and issued a criminal trespass warning.

The district court overruled A.T.H.'s motion to suppress, concluding that Chavez acted reasonably in stopping A.T.H. based on the anonymous tip because A.T.H. "looked like a student, was student age, and only later was it determined he was a student at a different school," and because "a policeman stationed at a school as a school resource officer stands in the same place as a school

2

administrator and so can search a student based on an anonymous tip of illegality.@ The court stated, AI do not believe that [A.T.H.] abandoned the property or voluntarily disclosed it when he tried to hide it from the police because he would not have been hiding it but for the policeman=s actions, so it was a stop. He was in control of the police when he did that. But I believe the stop, the investigatory stop was permitted because of, as I said, he=s acting as a school administrator and was on a school campus even though it was just an anonymous tip.@

A trial court=s ruling on a motion to suppress will be set aside only on a showing of an abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *In re V.P.*, 55 S.W.3d 25, 30 (Tex. App.CAustin 2001, pet. denied). The trial court is the sole trier of fact and judge of the weight and credibility to be given a witness=s testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); *Villarreal*, 935 S.W.2d at 138; *V.P.*, 55 S.W.3d at 30. We give almost total deference to a trial court=s determination of the facts and Amixed questions of law and fact@ that turn on an evaluation of witness credibility and demeanor. *V.P.*, 55 S.W.3d at 30-31; *In re L.M.*, 993 S.W.2d 276, 286 (Tex. App.CAustin 1999, pet. denied); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Where there is no disagreement about the facts, we may review questions not turning on credibility and demeanor *de novo*. *V.P.*, 55 S.W.2d at 31; *L.M.*, 993 S.W.2d at 286.

A.T.H. first argues that the Areduced standard of reasonable suspicion@ set out in *New Jersey v. T.L.O.*, 469 U.S. 325, 340-41 (1985), only applies to school officials, not to police officers like Chavez staffed as Astudent resource officers@ to investigate disruptive and criminal activity on campuses, and that the district court therefore erred in applying the *T.L.O.* standard to this pat-down. However, because

3

we believe that Chavez lacked justification for his pat-down of A.T.H. even under the *T.L.O.* standard, we need not address the question of what standard should be applied in student encounters with police officers staffed on campuses.[1]

---

[1] The search of a student by a school official is governed by standards similar to those applied to an investigative stop or a pat-down for weapons conducted by a police officer in a non-school setting. *See New Jersey v. T.L.O.*, 469 U.S. 325, 341-42 (1985) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). The Waco Court of Appeals recently examined the issue of Awhat standard should apply to a school search in which a law enforcement official is involved.@ *Russell v. State*, 74 S.W.3d 887, 891 (Tex. App.CWaco 2002, pet. ref=d). The *Russell* court, after reviewing cases from across the country, noted that searches of students involving police officers in a school setting are divided into A(1) those where school officials initiate a search or where police involvement is minimal, (2) those involving school police or liaison officers acting on their own authority, and (3) those where outside police officers initiate a search,@ and adopted those categories in its analysis. *Id.* at 891-92 (quoting *People v. Dilworth*, 661 N.E.2d 310, 317 (Ill. 1996)).

Ordinarily, a police officer may not conduct a seizure[2] and search of a suspect without Aprobable cause@ that a crime has been committed. *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *see T.L.O.*, 469 U.S. at 340. An exception to the requirement of probable cause allows the police to make a A*Terry* stop@ and Abriefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity >may be afoot,= even if the officer lacks probable cause.@ *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 30). Reasonable suspicion is a less demanding standard than probable cause, but the officer still must be able to articulate something better than an inchoate suspicion or hunch. *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 27). Reasonable suspicion is shown if the officer can point to Aspecific and articulable facts which, taken together with

---

[2] An individual is not seized simply because a police officer approaches and asks a few questions. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). If a reasonable person would feel able to decline the request or otherwise terminate the encounter and go about his business, the encounter is consensual and does not trigger constitutional scrutiny. *Id.*; *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995); *see California v. Hodari D.*, 499 U.S. 621, 627-28 (1991); *Terry*, 392 U.S. at 19 n.16 (1968). A seizure occurs when a reasonable person would believe he was not free to leave and has yielded to a show of authority or has been physically forced to yield. *Hodari D.*, 499 U.S. at 627-28; *Johnson*, 912 S.W.2d at 236. An investigative detention is a seizure for purposes of constitutional analysis. *Johnson*, 912 S.W.2d at 235. The age of a juvenile involved in a police encounter is a factor to be considered when determining whether the juvenile would have believed he was in custody. *In re D.A.R.*, 73 S.W.3d 505, 510 (Tex. App.CEl Paso 2002, no pet.).

5

rational inferences from those facts, reasonably warrant@ the police intrusion into the suspect=s constitutionally protected interests. *Terry*, 392 U.S. at 21. Reasonable suspicion is dependent upon the content of the officer=s information and its reliability, and both factors must be considered when examining reasonable suspicion under Athe totality of the circumstances.@ *Alabama v. White*, 496 U.S. 325, 330 (1990); *see Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Reasonable suspicion can arise from information that is less reliable than that required for probable cause. *White*, 496 U.S. at 330.

An anonymous tip, standing alone, may justify the initiation of an investigation but rarely provides the reasonable suspicion necessary to justify an investigative detention or search. *Id*. at 329; *Dowler v. State*, 44 S.W.3d 666, 669 (Tex. App.CAustin 2001, pet. ref=d); *Stewart v. State*, 22 S.W.3d 646, 648 (Tex. App.CAustin 2000, pet. ref=d); *Davis v. State*, 989 S.W.2d 859, 863 (Tex. App.CAustin 1999, pet. ref=d). Generally, an officer Amust have additional facts before the officer may reasonably conclude that the tip is reliable and an investigatory detention is justified.@ *Stewart*, 22 S.W.3d at 648; *see Florida v. J.L.*, 529 U.S. 266, 270 (2000); *White*, 496 U.S. at 330-31. The officer=s experience and prior knowledge, along with corroboration of the details of the tip, may give the officer reasonable suspicion. *Stewart*, 22 S.W.3d at 648; *Davis*, 989 S.W.2d at 864. Corroboration of details that are easily obtainable at the time the tip is made, however, does not furnish a basis for reasonable suspicion. *J.L.*, 529 U.S. at 271-72; *Stewart*, 22 S.W.3d at 648; *Davis*, 989 S.W.2d at 864. Descriptions of a subject=s observable appearance or location may help an officer identify the person being accused, but do

not corroborate the tipster=s knowledge of concealed criminal activity.**³** *J.L.*, 529 U.S. at 272; *Dowler*, 44

S.W.3d at 670.  In other words,

---

**³** *See*, *e.g.*, *Florida v. J.L.*, 529 U.S. 266, 268-69 (2000) (anonymous tip that Aa young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun@was not corroborated by police observation of three black males Ahanging out@ at bus stop, one wearing plaid shirt; Aaccurate description of a subject=s readily observable location and appearance@ helps police identify subject, but

Adoes not show that the tipster has knowledge of concealed criminal activity@); *Alabama v. White*, 496 U.S. 325, 332 (1990) (anonymous tip corroborated when defendant left particular apartment building at specified time, drove car matching description to described destination; tip sufficiently predicted defendant=s behavior as to demonstrate reliability); *Illinois v. Gates*, 462 U.S. 213, 243-44 (1983) (details set out in anonymous letter sufficiently corroborated where letter closely predicted defendants= future and suspicious behavior); *Adams v. Williams*, 407 U.S. 143, 146-47 (1972) (unverified tip reliable because officer knew informant personally and informant had provided accurate information in the past and would be subject to prosecution for making a false tip); *Hall v. State*, 74 S.W.3d 521, 526-27 (Tex. App.CAmarillo 2002, no pet.) (anonymous tip that red truck had been driving in wrong lane on highway was uncorroborated; but for tip, police had no reason to stop truck and, A[w]hile the indicia used as corroboration needed not be *per se* criminal, they must still be sufficient to permit one to reasonably deduce that appellant engaged in the misconduct for which he was accused by the tipster.@); *Dowler v. State*, 44 S.W.3d 666, 670 (Tex.

An accurate description of a subject=s readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

---

App.CAustin 2001, pet. ref=d) (anonymous tip of possible drunk driving sufficiently corroborated where police observed car weaving within lane, driving twenty miles below speed limit, and failing to respond when officer turned on his emergency lights; combined with tip that described truck and gave license plate number, innocent conduct gave rise to reasonable suspicion); *Stewart v. State*, 22 S.W.3d 646, 649 (Tex. App.CAustin 2000, pet. ref=d) (anonymous tip that driver appeared to be drunk was not corroborated by officer=s observation of car matching description when no erratic or illegal driving was observed); *Davis v. State*, 989 S.W.2d 859, 864-65 (Tex. App.CAustin 1999, pet. ref=d) (anonymous tip reported reckless driving and possible marihuana use by Athree white males@ and described car, dealer=s tag number, and general location; held to be uncorroborated because officer did not observe any erratic or suspicious driving and caller did not indicate why she believed the men were smoking marihuana; A[a]nyone with enough knowledge about a given person to make him the target of a prank, or to harbor a grudge against him, will certainly be able to formulate an anonymous tip hoping to initiate an investigation and perhaps a forcible stop or detention@); *State v. Adkins*, 829 S.W.2d 900, 901 (Tex. App.CFort Worth 1992, pet. ref=d) (anonymous face-to-face tip of drunk driving corroborated when officer observed described car being driven with flat tire and severely damaged wheel).

*J.L.*, 529 U.S. at 272.  Easily ascertainable details such as a subject=s clothing could be used by a tipster seeking to cause trouble for or play a prank on the subject.  *Davis*, 989 S.W.2d at 864.  To give rise to reasonable suspicion, the officer must be able to corroborate the improper nature of the subject=s behavior.  *Hall v. State*, 74 S.W.3d 521, 525 (Tex. App.CAmarillo 2002, no pet.).  Corroborating information that can give rise to reasonable suspicion includes details that accurately predict the subject=s future behavior, link the subject to the alleged criminal activity, or give a particularized and objective reason to suspect the subject.  *Davis*, 989 S.W.2d at 864 (quoting *Glenn v. State*, 967 S.W.2d 467, 470 (Tex. App.CAmarillo 1998), *pet. dism=d*, 988 S.W.2d 769 (Tex. 1999)); *see Dowler*, 44 S.W.3d at 670 (Aeven innocent acts can give rise to reasonable suspicion under the proper circumstances@).

Another exception to the requirement of probable cause is the Anarrowly drawn@exception that allows an officer to conduct a pat-down search or frisk for weapons during an investigative stop when the officer has reasonable suspicion to believe that the suspect might be armed and dangerous.  *Terry*, 392 U.S. at 27, 30-31.  The officer need not be certain that the suspect is armed; Athe issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.@ *Id*. at 27.  The purpose of a *Terry* frisk is not to discover evidence of illegal activity, but to allow the officer to investigate without fear of violence.[4]  *Minnesota v. Dickerson*, 508 U.S. 366,

---

[4] In *Wright v. State*, the court stated that Aa temporary investigative detention and pat down search for possible weapons *or contraband* without a warrant is permissible provided the officer has a reasonable belief the individual has been engaged in criminal activity or is armed.@ 7 S.W.3d 148, 150 (Tex. Crim. App. 1999) (emphasis added) (citing *United States v. Cortez*, 449 U.S. 411 (1981); *Ybarra*

373 (1993); *Ybarra v. Illinois*, 444 U.S. 85, 93-94 (1979); *Adams v. Williams*, 407 U.S. 143, 146 (1972); *Wood v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App. 1974); *Guevara v. State*, 6 S.W.3d 759, 764 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d).  Instead, a Aprotective search@ conducted without a warrant and based on reasonable suspicion is limited strictly to situations when it is necessary to ensure the safety of the officer or others nearby.  *Dickerson*, 508 U.S. at 373 (quoting *Terry*, 392 U.S. at 26).  AIf a police officer lawfully pats down a suspect=s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect=s privacy beyond that already authorized by the officer=s search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context@; however, if the initial pat-down is constitutionally invalid, the seizure of any contraband discovered is

---

*v. Illinois*, 444 U.S. 85 (1979); *Terry v. Ohio*, 392 U.S. 1 (1968)).  However, *Cortez* analyzed only the legality of the investigative stop and specifically did *not* examine the legality of the search, conducted with the defendant=s permission after the police made the investigative stop.  *See Cortez*, 449 U.S. at 421. *Ybarra* and *Terry* only address pat-downs for weapons.  *Ybarra*, 444 U.S. at 93-94; *Terry*, 392 U.S. at 27.  Furthermore, the *Terry* line of cases is clear in limiting such frisks to ensure that a suspect is not armed and dangerous.  *See Ybarra*, 444 U.S. at 93-94; *Terry*, 392 U.S. at 27; *Wood v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App. 1974); *Guevara v. State*, 6 S.W.3d 759, 764 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d).  In fact, in *Ybarra*, the court said,

> The Terry case created an exception to the requirement of probable cause, an exception whose Anarrow scope@ this Court Ahas been careful to maintain.@  Under that doctrine a law enforcement officer, for his own protection and safety, may conduct a pat down to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. . . .  Nothing in Terry can be understood to allow a generalized Acursory search for weapons@ or, indeed, any search whatever for anything but weapons.

*Ybarra*, 444 U.S. at 93-94 (citations omitted).

11

likewise unconstitutional. *Id*. at 375-76, 379; *see Guevara*, 6 S.W.3d at 764 (investigative detention justified by sufficient corroboration of anonymous tip, but articulated facts and circumstances did not support inference that officer had reasonable belief that suspect might be armed, therefore, pat-down unjustified). Routine alone is insufficient to justify a pat-down for weapons, but not every pat-down conducted as a matter of routine is automatically invalid. *O=Hara v. State*, 27 S.W.3d 548, 554 (Tex. Crim. App. 2000). The question is whether a reasonably prudent officer would believe that his safety or the safety of others was in danger, thus justifying a pat-down weapons search. *Id.* at 551; *see Terry*, 392 U.S. at 27.

Thus, applying the *T.L.O.* standard, whether a school police officer performs a search for contraband under reasonable suspicion of illegal activity[5] or conducts a pat-down weapons frisk under reasonable suspicion that the suspect might be armed and dangerous,[6] the searching officer must have reasonable suspicion to conduct the frisk or search. The officer must be able to articulate specific facts giving rise to a reasonable suspicion that a person might be armed and dangerous or involved in illegal activity; an inchoate hunch is not enough. *See Sokolow*, 490 U.S. at 7; *Ybarra*, 444 U.S. at 92-93. To rise to the level of reasonable suspicion, an anonymous tip must be corroborated by facts more substantial

---

[5] *See T.L.O.*, 469 U.S. at 341-42 (school officials search of student suspected of violating school rules must be supported by reasonable suspicion); *Coronado v. State*, 835 S.W.2d 636, 639-41 (Tex. Crim. App. 1992) (applying *T.L.O.* reasonable suspicion requirement to search by school official and school peace officer).

[6] *See Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993); *Terry*, 392 U.S. at 27; *Guevara*, 6 S.W.3d at 764.

than those easily observable, such as attire or location. *See J.L.*, 529 U.S. at 271-72; *Stewart*, 22 S.W.3d at 648.

Under this record, Chavez was justified in approaching A.T.H. and asking him his name and whether he attended Travis High School. His further detention of A.T.H. was an investigative detention, not a consensual encounter. *See Gamble v. State*, 8 S.W.3d 452, 453 (Tex. App.CHouston [1st Dist.] 1999, no pet.) (citing *State v. Velasquez*, 994 S.W.2d 676, 678-79 (Tex. Crim. App. 1999)). Assuming Chavez was justified in detaining A.T.H. based on the anonymous tip, the pat-down must have been reasonably related to the circumstances that initially justified the detention. *See T.L.O.*, 469 U.S. at 341; *Terry*, 392 U.S. at 19-20. In other words, Chavez must have had specific, articulable facts that, combined with his experience, gave him reasonable suspicion that A.T.H. was committing a criminal act, breaking school rules, or armed and possibly dangerous. *See Terry*, 392 U.S. at 30-31; *Dowler*, 44 S.W.3d at 669.

First, we note that Chavez testified that he conducted the pat-down *only for routine safety concerns*. This does not mean that the pat-down is automatically invalid, but the record must indicate that a reasonably prudent officer would believe that he or others might be at risk, thus justifying a pat-down weapons search. *O=Hara*, 27 S.W.3d at 551, 554; *see Terry*, 392 U.S. at 21. Chavez did not articulate and the totality of the circumstances do not show any facts to indicate that he was justified in conducting a *Terry* frisk for weapons. This encounter occurred in a high school parking lot in broad daylight during a school day. A.T.H., who appeared to be a teenager, was cooperative when approached by Chavez. Although Chavez did not recognize A.T.H. from campus, there was no testimony to indicate that he felt A.T.H. was dangerous. He did not testify that A.T.H. made any erratic, suspicious, furtive, or threatening

13

gestures, acted reluctant to speak to Chavez, or was anything other than cooperative when asked his name and birthday. He did not testify that A.T.H. was dressed in such a way as to conceal a weapon. *See Russell v. State*, 74 S.W.3d 887, 892 (Tex. App.—Waco 2002, pet. ref=d) (principal testified that Ashe was concerned that [student] might be concealing a weapon in the pocket@ of his baggy shorts and school police officer testified that Awhen people don=t want to empty their pockets for a school administrator, they=re hiding something they don=t want to have found@). Although the State argues that the anonymous tip gave Chavez reasonable suspicion to conduct the pat-down, the tip related only to alleged drug use and Chavez verbalized only that he was conducting a routine pat-down for weapons. As observed above, the *Terry* pat-down exception to probable cause is very narrowly drawn and applies only to frisks for weapons conducted for the safety of the officer or others nearby. *Dickerson*, 508 U.S. at 373; *Ybarra*, 444 U.S. at 93-94. Viewed in the light most favorable to Chavez=s action and the trial court=s decision, the record does not support a finding that Chavez or another reasonably prudent officer would believe that A.T.H. might be armed. Chavez did not have reasonable suspicion for conducting a weapons frisk of A.T.H.

As for reasonable suspicion that A.T.H. possessed contraband, Chavez did not testify that he had any reason for approaching A.T.H., much less patting him down, other than the anonymous tip.[7]

_____

[7] The State argues that the tip should be considered more reliable than the typical anonymous tip because the caller gave enough details about his own location, Anear . . . or at@ a particular nearby business, to Aexpose[] himself to the possibility of being held to account for his tip.@ Although conceding that the information was Aperhaps available to anyone who cared to look behind the [] business,@ the State argues it was Anot as *easily obtainable* as information@ found to be non-corroborative in other cases. We disagree. The caller refused to give his name and did not explain his connection to the business or how he came to see the youths. This call was no more reliable than the tips in *J.L.*, 529 U.S. at 271; *Hall*, 74 S.W.3d at

14

The tipster reported that several high school-aged students, one of whom was wearing a Dion Sanders football jersey, were smoking marihuana behind a business on the east side of campus. At the end of the conversation, the caller said the youths were Awalking off.@ The caller did not give his name or his reason for being at or near the business and did not state how he knew the youths were smoking marihuana. Chavez walked toward the edge of the campus, where he saw one young man wearing a Dion Sanders jersey. Chavez did not testify that he saw any other young people with A.T.H. or in the area. He did not testify that A.T.H. had glassy eyes, smelled of marihuana, was uncooperative, acted nervous, or made any furtive or suspicious gestures. In fact, Chavez testified that he only conducted the pat-down as a routine check for weapons; he did not testify that he was seeking evidence that A.T.H. had been using drugs. Chavez did not observe any suspicious behavior, and A.T.H.=s attire and his general location are by themselves too easily ascertainable to rise to the level that courts have held to be corroborative of illegal conduct. *See J.L.*, 529 U.S. at 271-72; *Hall*, 74 S.W.3d at 525-26; *Stewart*, 22 S.W.3d at 649; *Davis*, 989 S.W.2d at 864. Indeed, these two facts, Chavez=s only independent corroboration of the anonymous tip, are exactly the kinds of facts singled out by the United States Supreme Court as *non-corroborative* of criminal activity and *insufficient* to give rise to reasonable suspicion. *J.L.*, 529 U.S. at 272 (description of subject=s Areadily observable location and appearance@ helps police identify subject but does not show tipster=s knowledge of concealed criminal activity); *see Hall*, 74 S.W.3d at 525-26 (general description of truck insufficient); *Stewart*, 22 S.W.3d at 649 (general description of car and location insufficient); *Davis*, 989 S.W.2d at 864-65 (description of car, license plate number, general location, and number of

525-27; *Stewart*, 22 S.W.3d at 649; or *Davis*, 989 S.W.2d at 864-65.

15

passengers insufficient).  The tip was not corroborated by any independent observations giving rise to reasonable suspicion that criminal activity was afoot.  Therefore, a search for contraband was unjustified.

Because Chavez lacked reasonable suspicion to conduct either a weapons frisk or a pat-down for contraband, this pat-down was not based on Aspecific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed] that intrusion.@ *Terry*, 392 U.S. at 21.

16