# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00228-CV

In the Matter of K. C. B.

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-23,077, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## O P I N I O N

Appellant K.C.B., a juvenile, was adjudicated delinquent for possession of marihuana in a drug-free zone at Del Valle Junior High School and was placed on probation. *See* Tex. Health & Safety Code Ann. §§ 481.121, .134 (West 2003); Tex. Fam. Code Ann. § 54.03 (West 2002). He appeals contending that the trial court erred in denying his motion to suppress the State's evidence because (1) the school official did not have the requisite reasonable suspicion to search him, and (2) the evidence was inadmissible under the Texas exclusionary rule because the school official assaulted him while obtaining the evidence. Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 2004); Tex. Fam. Code Ann. § 51.17(c) (West 2002). We will reverse the trial court's judgment and remand the cause for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Travis County Sheriff's Office Incident Report, the veracity of which both the State and K.C.B. agreed upon at trial, lays out the only facts on record in this case. On September 23, 2002, Clifford Bowser, the Del Valle Junior High School hall monitor, received a tip from an anonymous student that K.C.B. had a plastic bag containing marihuana in his underwear. Bowser escorted K.C.B. to the office of Assistant Principal Jackie Garrett, where Bowser asked K.C.B. if he had "anything in his possession which he should not have." After K.C.B. responded that he did not, Bowser had him remove his shoes and socks, in which he found nothing. Bowser then informed Garrett that the tip indicated that the marihuana was in K.C.B.'s underwear. Garrett asked K.C.B. to lift up his shirt, at which time Garrett approached K.C.B. and extended the elastic on K.C.B.'s shorts. Observing a plastic bag in K.C.B.'s waistline, Garrett removed it, and K.C.B. was taken to the campus security office where Deputy Salazar, the school resource officer, arrested him for possession of marihuana.

K.C.B. was charged with possession of marihuana in a drug-free zone. He moved to have the marihuana evidence suppressed, arguing that the search and seizure violated his rights under the United States and Texas Constitutions. The trial court overruled K.C.B.'s motion to suppress, determining that "the actions taken by the school were not overly invasive in this situation." With his motion denied, K.C.B. pleaded true to the charge of possession of marihuana in a drug-free zone. Accordingly, the trial court adjudicated K.C.B. delinquent and sentenced him to six months' probation.

K.C.B. now raises two issues on appeal: (1) the trial court erred in denying the motion to suppress because the search was unreasonable and violated the United States and Texas

Constitutions; and (2) the trial court erred in denying the motion to suppress because an assault was committed by the retrieval of the evidence, invoking the Texas exclusionary rule.

## DISCUSSION

### Standard of Review

A trial court's ruling on a motion to suppress will be set aside only on a showing of an abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *In re V.P.*, 55 S.W.3d 25, 30 (Tex. App.—Austin 2001, pet. denied). The trial court is the sole trier of fact and judge of the weight and credibility to be given a witness's testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); *Villarreal*, 935 S.W.2d at 138; *V.P.*, 55 S.W.3d at 30. We give almost total deference to a trial court's determination of the facts and "mixed questions of law and fact" that turn on an evaluation of witness credibility and demeanor. *V.P.*, 55 S.W.3d at 30-31; *In re L.M.*, 993 S.W.2d 276, 286 (Tex. App.—Austin 1999, pet. denied); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In a case such as this where there is no disagreement about the facts, we review de novo questions not turning on credibility and demeanor. *V.P.*, 55 S.W.3d at 31; *L.M.*, 993 S.W.2d at 286. Because both issues fall into this category, we will review *de novo* the trial court's resolution of both issues.

### Reasonableness of the Search

K.C.B.'s first issue is that the trial court erred in denying his motion to suppress because the evidence was obtained during an unreasonable search by Garrett in violation of K.C.B.'s Fourth Amendment rights.

3

In searches of students conducted by public school officials,[1] the standard of suspicion necessary to comport with the Fourth Amendment is *reasonable suspicion*, not the usual *probable cause*. *New Jersey v. T.L.O.*, 469 U.S. 325, 340-41 (1986). The *T.L.O.* test to determine whether the facts lead to "reasonable suspicion" dictates that we look at (1) whether the action was justified at its inception; and (2) whether the search as actually conducted was reasonably related in scope to the circumstances that justified the original interference. *Id.* at 341-42. K.C.B. argues that the actions of Garrett and Bowser fail both prongs of this test.

According to the United States Supreme Court, "under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* K.C.B. argues that because the tip that led Bowser and Garrett to search him was made by an anonymous student, there were no reasonable grounds for suspecting a violation. K.C.B. contends that the first prong of the *T.L.O.* test fails here because there is no evidence that school officials based their search on anything other than the anonymous tip.

The State agrees that there is no evidence in the record that the anonymous tip was corroborated, but argues that because of the nature of the public school setting, the tip was sufficient to give the school officials reasonable suspicion even if it may not have sufficed elsewhere. The State relies on those cases acknowledging that because of the schools' custodial and tutelary responsibility, students' Fourth Amendment rights at school are different from those that exist

---

[1] Neither party argues that the school official was acting as a police officer.

outside of it. Additionally, the State argues that for the safety of the students and the benefit of the learning process there is a special need for immediate response to student behavior. *See Florida v. J.L.*, 529 U.S. 266, 274 (2000); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656-57 (1995); *T.L.O.*, 469 U.S. at 353.

The State argues that it is necessary to continue to recognize the diminished rights of students in this case because in a closed setting such as a school, people are less likely to give important information to authorities if they are not certain that their anonymity will be protected. The State further notes that the Supreme Court has recognized that with respect to anonymous tips, officials in locations such as schools, where Fourth Amendment rights are diminished, may conduct protective searches based on information that would be insufficient elsewhere. *J.L.*, 529 U.S. at 274.

Under the Fourth Amendment, the primary focus of an assessment of the reasonableness of a search by a member of the government requires analysis of the government interest being advanced to support the intrusion on the individual's rights. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "There is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.'" *Id.* (quoting *Camara v. Municipal Court*, 387 U.S. 523, 534-35, 536-37 (1967)). It was under this principle that the *Terry* Court crafted the test for reasonableness that was later adopted by the *T.L.O.* Court for searches by school officials. *Id.* Thus, in determining whether a search is justified at its inception, this overarching balance must be kept in mind.

In cases in which reasonable suspicion is the standard for law enforcement officials, the Supreme Court has held that in order to conclude that an anonymous tip is reliable, thereby justifying the search, there normally must be some further indicia of reliability contained within the

5

tip. *J.L.*, 529 U.S. at 271; *Alabama v. White*, 496 U.S. 325, 326 (1990). The Supreme Court has further held that in these cases an anonymous tip must be corroborated by more than just easily observable facts, such as attire or location, in order to rise to the level of reasonable suspicion. *J.L.*, 529 U.S. at 271-72.

The *T.L.O.* Court expressly stated that *under ordinary circumstances* a search by a school official will be justified at its inception only when there are reasonable grounds for suspecting that the search will turn up evidence. *T.L.O.*, 469 U.S. at 341-42. Uncorroborated anonymous tips do not ordinarily rise to the requisite level of reasonable suspicion. We have, in fact, previously held so. *In re A.T.H.*, 106 S.W.3d 338, 344 (Tex. App.—Austin 2003, no pet.). In *A.T.H.,* a law enforcement officer working at the school received a tip from an unidentified caller that a group of likely-students were smoking marihuana behind a nearby business. As the suspects walked back through the school parking lot, one of them was apprehended and searched by the officer, and drugs were found. We did not reach the issue of whether the officer acted as a school official because we held that he "lacked justification for his pat-down of A.T.H. even under the *T.L.O.* standard." *A.T.H.*, 106 S.W.3d at 341-42.

In this case, we are bound by the facts as stipulated to by both parties, and so are unable to determine whether the tip was truly anonymous, allowing for no indicia of reliability, or rather made to Bowser by a known student who asked the hall monitor that his name not be revealed. Under the latter circumstance there might be an added indicia of reliability, thus allowing him to reasonably rely upon the tip.

We recognize, however, that the State is correct in its assertion that the diminished right of privacy for students in schools and the custodial nature of the relationship between school

6

official and student do play a role in determining the reasonableness of such a search. Had the anonymous tip involved the presence of a weapon, for example, the circumstances presented might not be characterized as "ordinary" and the balance might tilt more strongly in favor of the government interest involved.

The legality of a search of a student is governed by "the reasonableness, under all the circumstances, of the search." *T.L.O.*, 469 U.S. at 341. It is from this overall sense of reasonableness under the circumstances that the necessity that a search be justified at its inception flows. *Id. Under ordinary circumstances*, the Supreme Court held, this is judged based on the presence of reasonable grounds for suspecting the search to turn up evidence, *id.*, but this still must be assessed in light of the overall reasonableness required by the Fourth Amendment. The compelling state interest required to infringe upon the rights of the individual is not a fixed, minimum quantum of government concern. *Vernonia*, 515 U.S. at 661. Rather, the phrase "compelling state interest" "describes an interest that appears *important enough* to justify the particular search at hand, in light of other factors that show the search to be relatively intrusive upon a genuine expectation of privacy." *Id.* It is for this reason that an anonymous tip alleging the presence of a weapon might very well present an extraordinary circumstance and could result in a search similar to the one in the case at bar being viewed as justified at its inception.

In determining the reasonableness of the caution being taken, it is necessary to take into account the nature of the relationship between the students and the school officials. In *Vernonia*, in which the random drug testing of students who chose to participate in inter-scholastic sports and signed waivers was held to be reasonable, the Court stated that the most significant element of its analysis was that the searches were "undertaken in furtherance of the government's

7

responsibilities, under a public school system, as guardian and tutor of children entrusted to its care . . . . [W]hen the government acts as guardian and tutor the relevant question is whether the search is one that a reasonable guardian and tutor might undertake." *Id.* at 665.

Although the Supreme Court has found an anonymous tip regarding a person carrying a weapon to be inadequate to provide reasonable suspicion for a police officer to conduct a stop and frisk, *J.L.*, 529 U.S. at 274, because of the different nature of the government interest and the level of expectation of privacy in the school setting, a search by a school official might be reasonable if performed in the school setting. In *J.L.,* the Supreme Court stated that the facts of the case did not require it to consider under which circumstances the danger alleged in an anonymous tip might be so great as to justify a search without a showing of reliability. *Id.* at 273. It went on to clarify that it specifically was not holding in its opinion that "public safety officials in quarters where the reasonable expectation of Fourth Amendment privacy is diminished, such as airports and schools, cannot conduct searches on the basis of information insufficient to justify searches elsewhere." *Id*. at 275 (internal citations omitted).

In contrast to a law enforcement officer, school officials' custodial responsibility results in a greater government interest in protecting the students from harm. The "government has a heightened obligation to safeguard students whom it compels to attend school." *T.L.O.*, 469 U.S. at 353 (Blackmun, J., concurring). In *Terry*, the Court held that in making the assessment as to whether an intrusion is called for in a particular situation, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry*, 392 U.S. at 21-22 (internal quotations omitted). The imminent risk of harm

posed by the presence of a weapon in a school setting makes immediate action all the more appropriate under such extraordinary circumstances.

While children do not lose their constitutional rights when in school, the nature of their rights is different than it is when they are not in school. *Vernonia*, 515 U.S. at 655-56. Specifically, the Supreme Court has held that at school, students have a lesser expectation of privacy than those outside of the school setting normally have. *Id*. at 657; *T.L.O.*, 469 U.S. at 348 (Powell, J., concurring). By balancing these diminished rights against the increased level of government interest in the protection of students in the school setting, a search for weapons in a school triggered by an anonymous tip might be found to be justified at its inception despite the fact that "under normal circumstances" there must be reasonable grounds for suspecting a search will uncover evidence.

The presence of drugs on a student, however, does not tip the balance far enough for the search in this case to be deemed justified at its inception. Immediacy of action is not as necessary as could be found with a tip regarding a weapon. Furthermore, although the *Vernonia* Court found the government interest compelling enough to justify further infringement on students' rights by randomly testing athletes for drugs, the Supreme Court noted that the average student has a higher expectation of privacy than those of the athletes being tested. *Vernonia*, 515 U.S. 657. The Court stressed that by choosing to participate in extra-curricular school athletics, the students voluntarily subjected themselves to more oversight than was imposed on other students. *Id.* For these reasons, we do not believe that the search of K.C.B., which turned up the marihuana evidence, was justified at its inception, and so it fails the test set out in *T.L.O.*

We therefore hold that the search was not based on a reasonable suspicion by the school officials, and therefore was not justified at its inception. The trial court abused its discretion in denying K.C.B.'s motion to suppress on the grounds that the search was unreasonable and violative of K.C.B.'s constitutional rights. We sustain K.C.B.'s first issue.

## CONCLUSION

We conclude that the trial court erred in denying K.C.B.'s motion to suppress on the grounds that the search was unreasonable and violative of K.C.B.'s constitutional rights. The standard of reasonableness constitutionally required of searches of students by school officials was not satisfied in the search for the marihuana. Accordingly, we reverse the trial court's judgment and remand the cause for further proceedings.[2]

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Reversed and Remanded

Filed: July 15, 2004

_____

[2] Having decided that the evidence should have been suppressed because it was obtained without reasonable suspicion, it is unnecessary for us to reach the second issue concerning the possible commission of an assault by Garrett during the search. *See* Tex. R. App. P. 47.1 (opinions should be as brief as practicable while addressing every issue necessary to final disposition of appeal).

10