**In the MATTER OF V.G.,
a Juvenile, Appellant.**

No. 08–15–00361–CV

Court of Appeals of Texas,
El Paso.

March 8, 2017

Jo Anne Bernal, El Paso, TX, Attorney for Appellee.

Ruben P. Morales, El Paso, TX, Attorney for Appellant.

Before McClure, C.J., Rodriguez, and Palafox, JJ.

## OPINION

GINA M. PALAFOX, Justice

Appellant V.G. was charged by petition with engaging in delinquent conduct based on possession of less than two ounces of marijuana within 1,000 feet of a school.[1] V.G. argues that the trial court erred in denying his motion to suppress evidence because the evidence was obtained during a search of his person in violation of his federal and state constitutional rights. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 2014, V.G., who was sixteen years old at the time, was detained along with several other students suspected of possessing a useable quantity of marijuana within 1,000 feet of a high school. *See* Tex. Health & Safety Code Ann. §§ 481.121, 481.134 (West 2010 & Supp. 2016); Tex. Fam. Code Ann. § 54.03 (West 2014). Following a pat down search, officers found a pill bottle in V.G.'s pocket that contained less than two ounces of marijuana and he was charged by petition with engaging in delinquent conduct. V.G. filed a motion to suppress the evidence that was found during the search, urging

that his detention and subsequent search of his person were illegal and in violation of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, Article I, Section 9 of the Constitution of the State of Texas, and Chapters 14 and 38 of the Texas Code of Criminal Procedure.[2]

Officer Neftali Cano, who was employed by the El Paso Independent School District (EPISD), testified that on October 8, 2014, he was assigned to work on patrol at Andress High School in El Paso. On that day, he responded to a call from a person in the nearby neighborhood who reported marijuana use in progress by a group of students standing at or near a home located on New Castle street. Officer Cano testified he was familiar with the reported area as students commonly gather there at lunch time. He further described that the area had a "known history both with me personally and with the police department in the City of El Paso Police Department as an area known for individuals possessing or using narcotics mainly marijuana." He also stated that "[t]here have been several or numerous fights, physical fights, not just with the students, but even with ex-students and other members of the community in those areas."

Upon his arrival to the scene, Cano testified he immediately observed a crowd of approximately twenty students but he did not see any ongoing criminal activity. However, when he stepped out of his marked vehicle and approached the crowd standing about ten feet from his position,

---

1. *See* Tex. Health & Safety Code Ann. §§ 481.121, 481.134 (West 2010 & Supp. 2016); Tex. Fam. Code Ann. § 54.03 (West 2014).

2. Appellant did not provide any substantive analysis or argument showing how the protection offered by the Texas Constitution may differ from the federal constitution. Thus, only

his federal constitutional claim is properly before this Court. *See Norris v. State,* 902 S.W.2d 428, 446 n.22 (Tex.Crim.App.), *cert. denied,* 516 U.S. 890, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995); *McCambridge v. State,* 712 S.W.2d 499, 501–02 n.9 (Tex.Crim.App. 1986).

he immediately smelled a very strong odor of marijuana lingering in the air. He testified that he was familiar with the smell of marijuana, based on his training and his 22 years in law enforcement, and that he could ordinarily smell burning marijuana within 25 feet of its source. He continued approaching the crowd to see if he could readily see someone openly smoking as he believed the marijuana odor may be coming from the individuals in that area. He also stated that the crowd he approached was the only crowd there on that street at that time.

As he approached, he testified he was concerned for his own safety given his knowledge of the area, the large number in the crowd, and the fact that he was working as a single officer. For his own safety and to assist with his investigation, he called for another unit and asked the students to take a seated position. Although several of the students then walked away, a group of twelve or fourteen that included V.G. sat down as requested. He testified that he believed it was tactically necessary for him to establish control by having the students take a seated position so he could have the advantage of looking over them. He also wanted to monitor to prevent anyone from trying to discard something into the nearby shrubs noting that this often occurs in a "typical scenario" of this nature. Officer Cano proceeded to explain to the students that he was there to observe and investigate. He testified that while he was present in the area he did not see anyone doing anything that would indicate they were then using marijuana beyond his general observation of an odor lingering in the air. At that point, additional officers arrived to assist.

Officer Stevens then testified that on his arrival, he saw Officer Cano standing near approximately fifteen juveniles who were seated on the sidewalk. He also testified

that no narcotics were visible but he smelled an odor of marijuana. He began monitoring the students when he noticed that V.G. had his hand in his right pocket and he was acting very nervous, "not of normal nature." According to Stevens, V.G. kept looking around to see where he and Officer Cano were standing and it appeared to him that V.G. was trying to discard something. Because he observed this behavior, Stevens testified that he then asked V.G. to stand and told him he that was going to pat him down for officer safety at that time. V.G. initially questioned why he was being searched. Stevens responded that he was not being searched, but rather, he was being patted down for officer safety. At the hearing, Stevens explained that he was concerned about weapons due to the area and "the student population." Officer Stevens then escorted V.G. to a police car and told him to place his hands on the vehicle. Stevens testified that during the pat down search, he found no weapons on V.G. but he could feel a lighter in his left pocket and what felt like a pill bottle in the right pocket.

Stevens then asked V.G. about the pill bottle he felt in his pocket. He testified that V.G. replied that it contained "prescription drugs." Stevens then testified that "I just asked him if he would remove the bottle so I could verify that it was a prescription drug [that] was made to him." Stevens clarified that he did not instruct V.G. to remove the bottle from his pocket and he did not tell him he had to remove it. Stevens said, "I asked him to show it to me." In response, Stevens testified that V.G. pulled the bottle from his pocket. Stevens then noted it was not a prescription pill bottle, but an "Herbal Life" bottle. As V.G. pulled the bottle from his pocket, Officer Stevens testified that he could smell a "really strong" odor of marijuana. Based on his suspicion that the bottle contained marijuana, Officer Stevens then

opened the bottle and discovered four baggies of a green leafy substance that he believed to be marijuana inside. He then placed V.G. in handcuffs, seated him in the backseat of his patrol car, and field-tested the substance. In addition to the two EP-ISD officers, V.G. also testified at the hearing. He stated he was having lunch with a group of students when Officer Cano arrived and told the group he was there to investigate because he received a complaint from the neighborhood that they were smelling marijuana. V.G. said that Officer Cano told them they were not being detained but they were not free to leave and he wanted them to take a seat. He took a seat and two or three minutes later Officer Stevens and another officer arrived at the same time.[3] V.G. testified that no one was doing anything wrong at this point in time.

V.G. acknowledged that he had his hand in his left pocket when Officer Stevens arrived. He then described that Officer Stevens approached him and asked what he had in his pocket. He responded, "I told him … I have my phone, my charger and a couple of other personal belongings[.]" V.G. stated the officer then asked him, "[d]o you mind if I can see your pockets and you show your pockets." V.G. replied, "I wouldn't want to do that." Officer Stevens and Deal then led him to his patrol car, told him to place his hands on the hood of the car, and thereafter conducted a pat down search. V.G. testified that Officer Stevens felt the pill bottle in his pocket during this search. He then asked V.G. what he had in his pocket. V.G. said he replied that it was an "Herbal Life" bottle, a pill bottle. V.G. then stated that Officer Stevens scooted the bottle up from his

pocket and grabbed it. Officer Stevens then asked him what was inside and V.G. told him he had supplements that he uses. V.G. testified that Stevens then opened the bottle and found the marijuana. V.G. described that his hands never left the hood of the police vehicle during the pat down until he was put in handcuffs.

No other witnesses testified and the hearing concluded. The trial court then denied V.G.'s motion to suppress evidence. The record contains no findings of fact or conclusions of law. V.G. thereafter admitted to the allegations of the petition and was adjudicated as a delinquent child and placed on probation until his eighteenth birthday. V.G. maintained his right to appeal the judgment entered against him.[4]

## DISCUSSION

In a single issue, V.G. contends that the trial court erred by denying his motion to suppress. He alleges first that police lacked reasonable suspicion to conduct an investigative detention, and thus, any evidence obtained after his initial detention should have been suppressed. Alternatively, he asserts that even if there was a sufficient basis for the initial detention, it should have been terminated once it was clear that there was no criminal activity occurring. He also asserts that the subsequent pat down search was unsupported by objective, articulable facts that V.G. was armed or that he posed a danger to the officers' safety. Finally, he contends that once the pat down search was conducted and no weapons were discovered, Officer Stevens' search should have terminated, and that Officer Stevens illegally extracted the pill bottle from his pocket

---

**3.** Officer Deal also arrived on scene but did not testify at the hearing.

**4.** Tex. Fam. Code Ann. § 56.01(n)(2)(West Supp. 2016) provides that a juvenile may bring an appeal based on a matter raised by written motion filed before the proceeding in which the child entered the plea or agreed to the stipulation of evidence.

without probable cause. Appellant contends that because the evidence was obtained under conditions that violated his Fourth Amendment rights, at every step along the way, the trial court should have granted his motion to suppress.

## STANDARD OF REVIEW

A trial court's denial of a motion to suppress is reviewed for an abuse of discretion affording almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor. *Furr v. State*, 499 S.W.3d 872, 877 (Tex.Crim.App. 2016). For mixed questions of law and fact, however, a *de novo* standard applies. For example, whether facts are sufficient to give rise to reasonable suspicion in a given case receives a *de novo* review. *Id.* "When the trial court does not make express findings of fact, as in this case, we view the evidence in the light most favorable to the trial court's ruling and will assume it made findings that are consistent with its ruling and that are supported by the record." *Id.* If the trial court's ruling is correct under any applicable theory of law, we will sustain its ruling. *Id.*

## ANALYSIS

### *The Initial Detention*

V.G. first argues that the police conducted an unlawful investigative detention that lacked reasonable suspicion thereby resulting in an unlawful Fourth Amendment seizure. And, therefore, he argues that any evidence obtained after his initial detention should have been suppressed. In response, the State admits that V.G. was detained but also asserts that this detention occurred in the course of a lawful "*Terry Stop*" based on reasonable suspicion that a crime had been committed. *Terry v. Ohio*,

392 U.S. 1, 16–17, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).

As described in *Terry v. Ohio*, the U.S. Supreme Court held that the Fourth Amendment of the U.S. Constitution protects people from unreasonable governmental intrusion even when an officer encounters a person in a public place or outside their home. *Id.* at 8–9, 88 S.Ct. at 1873. The *Terry* Court further explained that whenever a police officer restrains a person's freedom to walk away, he has "seized" that person and "[i]t is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." *Id.* at 16–17, 88 S.Ct. at 1877. The *Terry* court also recognized, however, that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. *Id.* at 22, 88 S.Ct. at 1880. In justifying a particular intrusion, a police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *Id.* at 21, 88 S.Ct. at 1880.

▮▮▮▮ The Court of Criminal Appeals set forth an objective standard that must be met at a suppression hearing to establish reasonable suspicion to support an investigatory detention. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex.Crim.App. 2011). "[T]he state need not establish that a crime occurred prior to the investigatory stop, but it must elicit testimony showing sufficient facts to prove that reasonable suspicion existed that a particular person has engaged in, or soon will be engaging in, criminal activity." *Id.* "This standard is an objective one; the court will take into account the totality of the circumstances in order to determine whether a reasonable

suspicion existed for the stop." *Id.* Two factors are examined in the determination of reasonable suspicion (1) the content of the information known to the officer at the relevant time, and (2) its degree of reliability. *Id.* The state must show that, at the time of the detention, the officer had specific, articulable facts that established reasonable suspicion. *Id.* "Those facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Id.*

Relying on *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000), V.G. asserts that Officer Cano lacked specific articulable facts of possible criminal activity to justify his initial detention. In *J.L.*, the officers' suspicion of possible criminal activity arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. *Id.* at 270, 120 S.Ct. at 1378. V.G. asserts that his detention also began with an anonymous tip of marijuana use by an unknown group of individuals and this tip by an unknown caller does not support a claim of reasonable suspicion. The Supreme Court recognized, however, that there are situations in which an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990)). With an anonymous caller, the inquiry includes an examination of whether the complaint had sufficient indicia of reliability to provide reasonable suspicion for the investigatory detention. *Id.* Importantly, the tip must be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. *Id.* at 272, 120 S.Ct. at 1379.

■ Here, we find that the record supported the trial court's implied finding that Officer Cano had specific and articulable facts to justify the initial detention of V.G. and the other students in the group as other factors beyond the anonymous call supported the detention. Upon his arrival to the area described by the caller, Officer Cano was able to immediately corroborate the information when he observed the presence of a group of students fitting the description given by the caller and he detected an odor of marijuana lingering in the air as he approached them. As such, the content of the caller's information coupled with Officer Cano's corroboration of its reliability established reasonable suspicion to initially detain V.G. and others given the totality of the circumstances. *See generally Furr*, 499 S.W.3d at 879–80 (where anonymous tip that two individuals were engaging in illegal activity was corroborated by the officers' observation at the scene and the fact that the individuals were located in a high-crime area, the totality of the circumstances gave the officers reasonable suspicion to detain the individuals).

### Pat Down Search

■ We next turn to whether there was lawful justification for Officer Stevens' invasion of V.G.'s personal security by searching him for weapons in the course of the ongoing investigation. A police officer who has lawfully detained a person for investigation may conduct a protective search of the detainee's outer clothing for weapons, if the officer has a reasonable belief based on specific articulable facts that the person is armed and dangerous. *See Terry*, 392 U.S. at 27, 88 S.Ct. at 1883; *Ybarra v. Illinois*, 444 U.S. 85, 93, 100 S.Ct. 338, 343, 62 L.Ed.2d 238 (1979); *Worthey v. State*, 805 S.W.2d 435, 438 (Tex.Crim.App. 1991). While an officer need not be absolutely sure that the person he frisks is armed, the specific facts

must amount to more than a mere hunch or unparticularized suspicion. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. In determining whether the officer was in fact justified in conducting a search, due weight must be given to the specific reasonable inferences an officer is entitled to draw from the facts of each case in light of his experience. *Id.* Further, the officers' suspicions must be "objectively justified" under the circumstances. *Furr*, 499 S.W.3d at 881. Additionally, the protective search must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex.Crim.App. 2000) (citing *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884).

To support his claim that Officer Stevens' pat down search was not lawful, V.G. relies on a case factually similar to this one, as it also involved an anonymous call made regarding teens smoking marijuana near a school. *In the Matter of A.T.H.*, 106 S.W.3d 338 (Tex.App.–Austin 2003, no pet.). Significantly, however, the responding officer in *In the Matter of A.T.H.* testified that he initiated a pat down search only for routine safety after initiating contact with a student wearing the clothing described by the caller. *Id.* at 347. Unlike in this case, in *In the Matter of A.T.H.* there was no testimony to indicate that the defendant acted nervous, or made any suspicious, furtive, or threatening gestures, or was anything other than cooperative during the encounter. *Id.* at 347–48. An anonymous tip standing alone then, without any other articulable factors, did not justify the officer's pat down search. *Id.*

We find the evidence in this case distinguishable for a variety of reasons. First, as discussed above, Officer Stevens testified that his attention was drawn to V.G. specifically because he acted very nervous in comparison to all the other students being detained. Additionally, Officer Stevens testified that he observed V.G.'s hand in his pocket while he and Officer Cano stood close by. The officers also testified to other contextual factors including their detection of the smell of marijuana at the location and the fact that it is an area known among officers for fighting and drug use.

Judging the evidence in the light most favorable to the trial court's ruling, we find the evidence supports the trial court's implied finding that a reasonably prudent person considering all of the circumstances in this case would have been warranted in believing that his safety or that of others was in danger. Due weight is given to specific reasonable inferences that an officer is entitled to draw from the facts of the given circumstances in light of his experience. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. Accordingly, we hold that Officer Stevens was objectively justified in patting down V.G. for weapons. *See, e.g., Furr*, 499 S.W.3d at 881 (court of appeals correctly concluded that "reasonably prudent person considering all of the circumstances in this case, including the anonymous tip, the personal observations of police, and the area involved, would have been warranted in believing that his safety or that of others was in danger[,]" thereby justifying the officer's pat down search).

*The Search and Seizure of the Pill Bottle*

Next, we turn to the question of whether the removal and examination of the pill bottle found in V.G.'s pocket exceeded the permissible scope of a protective weapons search. V.G. argues that once the officer satisfied himself that V.G. had no weapons, the officer had no valid reason to further invade his right to be free of intrusion absent probable cause to arrest. *Lippert v. State*, 664 S.W.2d 712, 721 (Tex.Crim.App. 1984) (recognizing that if "in the course of

a pat-down frisk the officer satisfies himself that the suspect has no weapons, the officer has no valid reason to further invade the suspect's right to be free of police intrusion absent probable cause to arrest"). Indeed, Officer Stevens testified at the hearing that he did not believe that V.G. had any weapons on him once he completed the pat down search. In particular, he testified that the only objects he felt during his pat down was a lighter in V.G.'s left pocket and "what felt to be like a pill bottle" in V.G.'s right pocket.

Generally, if a warrantless search exceeds what is necessary to determine whether a suspect is armed, then the fruits of that search are illegal and must be suppressed unless another exception applies. *Carmouche*, 10 S.W.3d at 330. However, under the "plain feel" exception, a police officer may seize non-threatening contraband that is detected in the course of a pat down weapons search. *Minnesota v. Dickerson*, 508 U.S. 366, 370, 375–76, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). If an officer feels an object and its incriminating character is immediately apparent, then its seizure is justified because there is no invasion of privacy beyond that which was already authorized by the officer's search for weapons. *Id.* Here, however, we find that the "plain feel" doctrine does not apply to the seizure of the pill bottle in V.G.'s pocket. As Officer Stevens acknowledged, he did not believe that the pill bottle was a weapon nor did he state that he immediately recognized the item as one of an incriminating character without need for any further investigation.

Nevertheless, because the trial court's ruling may be based on any applicable theory of law, we next turn to an additional theory asserted by the State that would support the trial court's ruling, if applicable. The State asserts that after Officer Stevens completed his pat down for weapons V.G. gave his consent to removal of the bottle from his pocket.

Consent to search is a well-established exception to constitutional requirements. *Carmouche*, 10 S.W.3d at 331. The Fourth Amendment requires, however, that a person's consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973)). The voluntariness of a person's consent is a question of fact that is determined by analyzing all the circumstances of a particular situation. *Schneckloth*, 412 U.S. at 233, 93 S.Ct. at 2050. Although voluntariness need only be shown by a preponderance of evidence pursuant to the federal constitution, the standard of clear and convincing evidence is needed pursuant to the Texas Constitution. *Carmouche*, 10 S.W.3d at 331. Whether consent was voluntary is a factual question and must be analyzed based on the totality of the circumstances. *Meekins v. State*, 340 S.W.3d 454, 460 (Tex.Crim.App. 2011). A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent. *Id.* at 458.

A court reviewing the circumstances must do so from the point of view of the objectively reasonable person, without regard for the subjective thoughts or intent of either the officer or the citizen. *Id.* at 459. "Because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous." *Id.* at 460. A trial court's finding of involuntariness is also afforded the same great deference. *Id.*

In the present case, the historical facts are directly disputed on the issue of

whether V.G. gave consent to the removal of the pill bottle from his pocket. Officer Stevens testified that once he felt a pill bottle in V.G.'s pocket, he proceeded to ask him about it. According to the officer, V.G. responded that it was "prescription drugs." Next, Officer Stevens asked V.G. if he would remove the bottle so he could verify that it was a prescription drug made to him. Officer Stevens then testified that V.G. complied and pulled the bottle from his pocket. During cross-examination, Officer Stevens further clarified that when he asked whether V.G. would remove the bottle that he was not directing him to remove it. After the pill bottle was out of V.G.'s pocket, Officer Stevens testified that because he smelled a strong odor of marijuana, he opened up the bottle and thereafter found four baggies of marijuana, or green leafy substance he believed to be marijuana. V.G., on the other hand, testified inapposite at the hearing and stated that Officer Stevens pulled the bottle from his pants without his permission, and without first obtaining his consent.

■ The question of whether a defendant consented is a mixed question of law and fact that ultimately turns on an evaluation of credibility and demeanor. *See, e.g., Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim.App. 1997) ("[i]f the issue involves the credibility of a witness, thereby making the evaluation of that witness's demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts"). In the present case, we must presume that the trial court evaluated the credibility of the two witnesses, and resolved the dispute in their testimony in the officer's favor. We therefore must defer to the trial court's implied finding on this pivotal issue of whether V.G. consented to the removal of the pill bottle from his pocket.

■ And finally, V.G. argues that after the pill bottle was out of his pocket, Stevens had "no reason to believe that the pill bottle was contraband or a weapon," and therefore had no right to open the bottle. As set forth above, Officer Stevens expressly testified at the suppression hearing that once V.G. took the bottle out of his pant pocket, he smelled the odor of marijuana. At the hearing, V.G. did not contest Officer Stevens' testimony regarding the presence of an odor of marijuana or his ability to detect such odor coming from the bottle.

■ The Court of Criminal Appeals stated in *Estrada v. State*, 154 S.W.3d 604, 609 (Tex.Crim.App. 2005), that an "odor of an illegal substance" may be a factor that police officers use in determining whether there is probable cause that an offense has been or is being committed. Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found. *Id.* at 609. An odor of marijuana is an element or layer in determining whether there is probable cause that an offense has been or is being committed. *Id.* Consequently, several courts have concluded that officers' may rely on an odor of marijuana, coupled with other circumstances, to justify warrantless searches of residences and persons. *See Parker v. State*, 206 S.W.3d 593, 600 (Tex.Crim.App. 2006) (sufficient to establish probable cause for a warrantless entry into a residence to investigate further); *Estrada*, 154 S.W.3d at 609–10 (odor of marijuana supported search of a house); *Ross v. State*, 486 S.W.2d 327, 328 (Tex.Crim.App. 1972), *overruled on other grounds by Walters v. State*, 359 S.W.3d 212 (Tex.Crim.App. 2011) (odor of marijua-

na provided probable cause to search a defendant's person).

■ Once again, in considering the various factors at play here, which included the neighborhood call that the group of students were seen smoking marijuana in the area, the fact that the responding officers immediately detected the odor of marijuana lingering in the area upon approaching the students, the fact that the area was a known location for marijuana use, and the fact that Officer Stevens detected the smell of marijuana emanating from the pill bottle when being examined, we conclude that the trial court had sufficient evidence from which to find that there was probable cause to believe that V.G. had committed, or was committing, the offense of possession of marijuana, thereby justifying this search and seizure of the pill bottle.[5]

## CONCLUSION

We conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress the evidence found during the search of V.G.'s person. Accordingly, Appellant's issue is overruled and the judgment of the trial court is affirmed.

---

**5.** As a final point, the State alternatively asserts that the marijuana was discovered during a search incident to arrest. We find, however, that the search incident to arrest exception does not apply to this case because the search of V.G.'s pocket and the pill bottle found therein occurred before the arrest decision had yet developed. Thus, application of the search incident to arrest exception is not logical to the facts of this case nor is it necessary to support the trial court's ruling.