**Sean P. IRBY, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11-87-152-CR.**

Court of Appeals of Texas,
Eastland.

May 19, 1988.

Sara Fauls, Wilson, Newman & Wilson, Abilene, for appellant.

James Eidson, Criminal Dist. Atty., Abilene, for appellee.

OPINION

DICKENSON, Justice.

Sean P. Irby entered a plea of not guilty and waived his right to a jury trial. The trial court convicted him of the Class B misdemeanor offense [possession of less than two ounces of marihuana] and assessed his punishment at confinement in the county jail for 20 days [probated for six months] and a fine of $300 [to be paid in five monthly payments]. We affirm the conviction.

Appellant presents two points of error, arguing that the trial court erred: (1) in overruling his motion to suppress evidence because the search of appellant's coat "was conducted in violation of his fourth amendment rights," and (2) in admitting the evidence because "there was no chain of custody shown regarding the evidence admitted."

The first point of error is overruled because we find no violation of appellant's

rights under the fourth amendment to the United States Constitution. At the time of the offense [November 26, 1986] appellant was 17 years old, and he was an 11th grade student at Cooper High School in Abilene. Jerry McCutchen, an associate principal of the high school, testified that one of the teachers informed him that she heard some students talking about a student [the unidentified informant] who had marihuana with him at school. She sent that student to Mr. McCutchen, and Mr. McCutchen asked him if he had any marihuana on him [answer: yes]; asked him to give it to me [he did so]; and asked him where he had gotten it [from Sean P. Irby]. Mr. McCutchen then went to appellant's classroom, got appellant out of the classroom, and brought him to the office.

Mr. McCutchen testified that he told appellant that they "had reason to believe that he had some marihuana on him and asked him if he would mind ... us searching and he said: 'No.'" Another associate principal looked through the contents of appellant's pockets which appellant had put on the desk. Mr. McCutchen went through appellant's coat and found the marihuana concealed in the lining of the coat.

The Supreme Court of the United States addressed the application of the fourth amendment to searches conducted by public school officials in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The majority opinion in *T.L.O.*, 469 U.S. at 333, first holds that the fourth amendment's prohibition on unreasonable searches and seizures does apply to searches conducted by public school officials. The majority opinion in T.L.O. then states, 469 U.S. at 337–343, 105 S.Ct. at 740–743:

> To hold that the Fourth Amendment applies to searches conducted by school authorities is only to begin the inquiry into the standards governing such searches. Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, *what is reasonable depends on the context within which a search takes place*. The determination of the standard of reasonableness governing any

specific class of searches requires "balancing the need to search against the invasion which the search entails." [Citation omitted] On one side of the balance are arrayed the individual's legitimate expectations of privacy and personal security; on the other, the government's need for effective methods to deal with breaches of public order.

> We have recognized that even a limited search of the person is a substantial invasion of privacy. [Citation omitted] We have also recognized that searches of closed items of personal luggage are intrusions on protected privacy interests, for "the Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view." [Citation omitted] A search of a child's person or of a closed purse or other bag carried on her person, no less than a similar search carried out on an adult, is undoubtedly a severe violation of subjective expectations of privacy.

> Of course, the Fourth Amendment does not protect subjective expectations of privacy that are unreasonable or otherwise "illegitimate." [Citations omitted] To receive the protection of the Fourth Amendment, an expectation of privacy must be one that society is "prepared to recognize as legitimate." [Citation omitted]

> \* \* \* \* \* \*

> Although this Court may take notice of the difficulty of maintaining discipline in the public schools today, the situation is not so dire that students in the schools may claim no legitimate expectations of privacy. We have recently recognized that the need to maintain order in a prison is such that prisoners retain no legitimate expectations of privacy in their cells, but it goes almost without saying that "[t]he prisoner and the schoolchild stand in wholly different circumstances, separated by the harsh facts of criminal conviction and incarceration." [Citation omitted] We are not yet ready to hold that the schools and the prisons need be equated for purposes of the Fourth Amendment.

Nor does the State's suggestion that children have no legitimate need to bring personal property into the schools seem well anchored in reality. Students at a minimum must bring to school not only the supplies needed for their studies, but also keys, money, and the necessaries of personal hygiene and grooming. In addition, students may carry on their persons or in purses or wallets such nondisruptive yet highly personal items as photographs, letters, and diaries. Finally, students may have perfectly legitimate reasons to carry with them articles of property needed in connection with extracurricular or recreational activities. In short, schoolchildren may find it necessary to carry with them a variety of legitimate, noncontraband items, and there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds.

Against the child's interest in privacy must be set the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds. Maintaining order in the classroom has never been easy, but in recent years, school disorder has often taken particularly ugly forms; drug use and violent crime in the schools have become major social problems. [Citation omitted] Even in schools that have been spared the most severe disciplinary problems, the preservation of order and a proper educational environment requries close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult. "Events calling for discipline are frequent occurrences and sometimes require immediate, effective action." [Citation omitted] Accordingly, *we have recognized that maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures,* and we have respected the value of preserving the informality of the student-teacher relationship. [Citations omitted]

How, then, should we strike the balance between the schoolchild's legitimate expectations of privacy and the school's equally legitimate need to maintain an environment in which learning can take place? *It is evident that the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject. The warrant requirement, in particular, is unsuited to the school environment:* Requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools. Just as we have in other cases dispensed with the warrant requirement when "the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search," [Citation omitted] *we hold today that school officials need not obtain a warrant before searching a student who is under their authority.*

*The school setting also requires some modification of the level of suspicion of illicit activity needed to justify a search.* Ordinarily, a search—even one that may permissibly be carried out without a warrant—must be based upon "probable cause" to believe that a violation of the law has occurred. [Citations omitted] However, "probable cause" is not an irreducible requirement of a valid search. The fundamental command of the Fourth Amendment is that searches and seizures be reasonable, and although "both the concept of probable cause and the requirement of a warrant bear on the reasonableness of a search, ... in certain limited circumstances neither is required." [Citation omitted] Thus, we have in a number of cases recognized the legality of searches and seizures based on suspicions that, although "reasonable," do not rise to the level of probable cause. [Citations omitted] Where a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness

that stops short of probable cause, we have not hesitated to adopt such a standard.

*We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause* to believe that the subject of the search has violated or is violating the law. Rather, *the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.* Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception," [Citation omitted]; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place." [Citation omitted] *Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.* Such a search will be permissible in its scope when the measures adopted are *reasonably related to the objectives of the search and not excessively intrusive* in light of the age and sex of the student and the nature of the infraction.

This standard will, we trust, neither unduly burden the efforts of school authorities to maintain order in their schools nor authorize unrestrained intrusions upon the privacy of schoolchildren. By focusing attention on the question of reasonableness, the standard will spare teachers and school administrators the necessity of schooling themselves in the niceties of probable cause and permit them to regulate their conduct according to the dictates of reason and common

sense. At the same time, the reasonableness standard should ensure that the interests of students will be invaded no more than is necessary to achieve the legitimate end of preserving order in the schools. (Emphasis added)

■ The trial court did not err in overruling the motion to suppress because the search of the student by the two associate principals was "justified at its inception" by reasonable grounds for suspecting that the search would discover evidence that the student was carrying marihuana in violation of the law and also in violation of the school's rules. The search of the student's jacket was reasonable and was not excessively intrusive. A search warrant was not required, and it was not necessary for the school administrator to disclose the name of the unidentified student informant.

■ We do not agree with appellant's contention that *New Jersey v. T.L.O., supra,* is inapplicable because appellant was prosecuted as an adult while T.L.O. was prosecuted as a juvenile. It seems clear to us that the Supreme Court's holdings in *T.L.O.,* supra, apply to school searches of students, regardless of whether the students are later prosecuted, either as adults or juveniles.

The second point of error is also overruled. The State made sufficient proof of the chain of custody on the contraband. While Mr. McCutchen, the associate principal, did not put his initials on the bag containing the marihuana and conceded on cross-examination that "I don't guess that I know" that the exhibits at the time of trial were the same as the two items which he found in appellant's jacket, he did testify that they looked the same. More importantly, Mr. McCutchen testified that he gave the contraband to the Abilene police officer, and that officer testified. Officer Mike Ricker testified that Mr. McCutchen "handed me these items here in front of me," that he "booked them into the evidence vault" at the police department, and that he took the items out of the evidence vault on the morning of the trial and brought them to the courthouse himself. Officer Ricker identified the contraband as

a usable quantity of marihuana [two grams]. When viewed in the light most favorable to the trial court's judgment [See *Houston v. State*, 663 S.W.2d 455 (Tex.Cr. App.1984)], the evidence is sufficient to support the trial court's finding that the State proved the chain of custody and that the marihuana produced at the trial was the same as the contraband taken from appellant's jacket. See *Wright v. State*, 420 S.W.2d 411 at 413 (Tex.Cr.App.1967).

The judgment of the trial court is affirmed.