Jose Eduardo **CORONADO, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 529–91.

Court of Criminal Appeals of Texas, En Banc.

June 24, 1992.

---

Greg S. Velasquez, Houston, for appellant.

Michael J. Guarino, Dist. Atty., and Denise V. Wilkerson, Asst. Dist. Atty., Galveston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

Appellant was charged with the offense of possession of cocaine. Tex.Health & Safety Code Ann. § 481.112. Appellant moved to suppress the evidence discovered during a search of appellant's vehicle by public school officials. The trial judge denied the motion. Appellant later entered a plea of nolo contendere and contested the legality of the search on appeal. The Court of Appeals affirmed. *Coronado v. State*, 806 S.W.2d 302, 303 (Tex.App.—Texarkana 1991). We granted appellant's petition for discretionary review to consider the reasonableness of the search of appellant's vehicle by the school officials. We will reverse.[1]

1. Specifically, appellant's ground for review states:

The Court of Appeals erred in holding that the evidence obtained by a search of appellant's

person, locker and automobile was reasonable and initially justified.

### I.

The relevant facts developed at the hearing on appellant's motion to suppress evidence are as follows. On April 27, 1989, Kim Benning, an assistant principal, received information that appellant attempted to sell drugs to another student. Benning questioned and patted down appellant, then had appellant turn his pant pockets inside-out, remove his shoes, and pull down his pants. The search, which Benning testified was "standard," produced no contraband or weapon. However, Benning did find $300.00 in cash in appellant's billfold. At the search, Benning asked appellant, "Do you sell drugs?" and appellant replied, "Not on campus."

On May 5, 1989, the school secretary informed Benning that appellant was leaving school at 9:30 to attend his grandfather's funeral. Benning informed both Ernest Randall, a sheriff's officer assigned to the school, and the regular school security guard that appellant "was attempting to leave the campus and that [Benning] suspected his motives for leaving campus." Benning saw appellant at an outside pay phone and asked appellant "to come inside." Benning asked appellant where appellant's vehicle was parked and appellant responded that he did not drive. Benning contacted appellant's relatives who stated that appellant's grandfather had not died. In response to another question, appellant's relatives told Benning that appellant drove a Buick to school that morning. Appellant, however, identified his vehicle as a red Camaro, which was not parked on campus. Benning had a teacher question a student who rode to school with appellant and determined that appellant's vehicle was in the student parking lot. Benning then sent the school security officer to locate the vehicle.

Benning called Randall to Benning's office after verifying that appellant's reasons for leaving school were false. Although Randall testified he acted as an "advisor," the record reflects Randall was employed

with the Galveston County Sheriff's Department Organized Crime Division on special assignment to the Clear Creek High School. Randall had an office on the school premises and his duties were to investigate alcohol and drug activities and "anything else that violates the penal code." Randall testified he did not have probable cause to search appellant nor did he observe appellant commit any illegal acts.

Benning testified that he detained appellant to ascertain a "reasonable suspicion" for appellant's actions. While in Benning's office, Randall testified that appellant was evasive in his answers and told several different versions of how appellant travelled to and from school. Benning claimed he had cause to search appellant due to the April 27 tip that appellant had attempted to sell drugs. However, Benning conceded that he did not observe appellant commit any illegal act and was only trying to determine whether appellant was "skipping school." Benning stated that truancy applied only to students under seventeen years of age. Appellant was nineteen at the time of the search. If appellant had "skipped school," Benning could have assigned appellant to detention or an "alternate learning center."

At the hearing on appellant's motion to suppress evidence, the following exchange occurred between Benning and appellant's trial counsel:

Q. [Did you observe anything] illegal according to the laws of the State of Texas or the laws of the United States?

A. Possible truancy. *That's what I was trying to establish.*[2]

Q. So aside from possible truancy, had he committed any illegal law violations regarding any laws of the State of Texas or laws of the United States? Yes, or no?

A. No.

Q. And you proceeded to search him even though you had not seen him commit any illegalities in your presence?

A. Do you want me to comment on that?

Q. I want you to answer it, yes, or no?

A. He would not tell me where his car was parked.

\*     \*     \*     \*     \*     \*

Q. Again, during this time, he had not committed any illegal acts or had violated any law of the State of Texas or violated any law of the United States?

A. To that point, I could not establish any illegal acts.

Benning "patted down" appellant, out of a concern for safety, but found only keys and a wallet with $197.00 in currency. Benning, with Randall observing, then asked appellant to remove his shoes and socks. After finding no contraband, Benning then had appellant pull down his pants.[3] Randall acknowledged that Benning was irate and shaking in anger during the searches and testified that the proceedings in Benning's office lasted approximately forty-five minutes. After finding no contraband on appellant, Benning and Randall searched appellant's locker, but found no contraband. Benning, Randall and appellant returned to Benning's office. While in the office, appellant was not permitted to leave except to go to the restroom.

Later, Benning, Randall, and the school security guard accompanied appellant to his vehicle where Benning demanded appellant open the vehicle. The Court of Appeals stated: "Coronado then volunteered to take the two men to the car and told Benning that it would be all right for him to search the car." *Coronado*, 302 S.W.2d at 303. However, that statement is not supported by the record. Benning testified as follows:

Q. When you went to [appellant's] car with all three of you with him, Mr. Randall demanded that [appellant] open the car door?

---

2. Unless otherwise indicated, all emphasis herein is supplied by the author.

3. Benning testified that appellant only "loosened" his pants to "see if anything would fall out."

A. [I] demanded that [appellant] open the car. I was conducting the search.

Q. And Mr. Randall had the keys to the car?

A. I don't recall.

Q. Did you have the keys?

A. I don't recall. It was demanded that he open the car upon my request.

Q. Upon your request with two other men next to him, one being an officer, police officer, and the other being a security guard and he acquiesced to your request?

A. Yes.

When appellant opened the trunk, Benning saw appellant attempt to hide a paper bag. Subsequently, Randall discovered bags of white powder, a triple beam balance, and what appeared to be marijuana. After searching the vehicle, including the trunk and engine compartment, Randall arrested appellant.

After the arrest, Randall handcuffed appellant to a chair in Randall's office for two to three hours. Appellant eventually gave a statement revealing prior and pending drug deals. Appellant claims he gave the statement because he thought he would get the vehicle back.

Appellant testified that Benning and Randall forced him to go to the principal's office for the initial search. Appellant balked at pulling down his pants, but Randall told appellant to do what the principal said. According to appellant, Randall held appellant's wallet and keys until the group arrived at appellant's vehicle.[4] Randall gave appellant the keys and appellant was forced to open the vehicle. According to appellant, Randall and the security guard searched the vehicle along with Benning. Appellant never attempted to escape. Neither Benning nor Randall ever told appellant of the right to refuse a search of the locker or vehicle.

**4.** Benning testified that he returned appellant's keys "at some point" after the search in the

## II.

To determine the reasonableness of the search of appellant's vehicle under the Fourth Amendment, we turn to *New Jersey v. T.L.O.*, 469 U.S. 325, 327, 105 S.Ct. 733, 735, 83 L.Ed.2d 720 (1985), where the United States Supreme Court granted certiorari "to examine the appropriateness of the exclusionary rule as a remedy for searches carried out in violation of the Fourth Amendment by public school authorities." *T.L.O.* addressed the proper standard for assessing the legality of searches conducted by public school officials. *Id.* In *T.L.O.*, a teacher discovered two girls smoking in a lavatory in violation of a school rule. The school's principal demanded to look in T.L.O.'s purse and removed a package of cigarettes which uncovered rolling papers. The discovery of the rolling papers prompted a more thorough search of the purse which produced marijuana, a pipe, empty plastic bags, money, a list of students, and information that implicated T.L.O. in marijuana dealing. The New Jersey Supreme Court held the evidence inadmissible because the contents of the purse had no bearing on the accusation against T.L.O. and that possession of cigarettes, as opposed to the act of smoking in the lavatory, did not violate school rules. However, the United States Supreme Court concluded the search of the purse was permissible because the principal acted reasonably when he examined the purse for cigarettes. *Id.*, 105 S.Ct. at 745.

In *T.L.O.*, the Court held the Fourth Amendment's prohibition on unreasonable searches and seizures applied to searches conducted by public school officials. *Id.*, at 738. "In carrying out searches and other disciplinary functions pursuant to [school] policies, school officials act as representatives of the State, not merely as surrogates for the parents, and they cannot claim the parents' immunity from the strictures of the Fourth Amendment" *Id.*, at 740. Additionally, the Court held:

It is now beyond dispute that "the Federal Constitution, by virtue of the

office so that appellant could open the vehicle.

Fourteenth Amendment, prohibits unreasonable searches and seizures by state officers." [citations omitted.] Equally indisputable is the proposition that the Fourteenth Amendment protects the rights of students against encroachment by public school officials:

"The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted. These have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights. That they are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes. [citations omitted.]

*Id.* at 738–739.

The United States Supreme Court acknowledged that "in recent years, school disorder has often taken particularly ugly forms: drug use and violent crime in the schools have become major social problems." *Id.,* at 741. Additionally, the Court noted the "difficulty of maintaining discipline in the public schools today," but also noted "the situation is not so dire that students in the schools may claim no legitimate expectations of privacy." *Id.,* at 741. In addition to study materials, students commonly carry items to school in which the student holds a high expectation of privacy such as purses, wallets, photographs, letters, and diaries. *Id.* However, the Supreme Court concluded:

. . . the accommodation of the privacy interests of school children with the substantial need of teachers and administrators for freedom to maintain order in the school does not require strict adherence to the requirement that searches be based on probable cause to believe the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.

*Id.* at 742.

To balance the student's expectation of privacy and the need for security in our schools, the Court held that school officials need not obtain a warrant before searching a student who is under their authority. *Id.* However, the Court recognized the Fourth Amendment commands that all searches and seizures be reasonable. *Id.* Therefore, the legality of a search of a public school student depends on the reasonableness, under all of the circumstances, of the search. *Id.*

The Supreme Court established a two prong test to determine the reasonableness of the search. First, a court must determine whether the search was justified at its inception. A search of a student by a teacher or school official is justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated, or is violating, either the law or the rules of the school. Second, a court must determine whether the search, as actually conducted, was reasonably related in scope to the circumstances which justified the interference in the first place. A search is permissible in its scope when the measures adopted and used are reasonably related to the objectives of the search and are not excessively intrusive in light of the age and sex of the student and the nature of the infraction. *See, T.L.O.,* at 742–743.

In *T.L.O.,* the discovery of the contraband stemmed directly from a search of T.L.O.'s purse for cigarettes. The search was reasonable because T.L.O. had been discovered smoking in the lavatory and the search of the purse was reasonably related in scope to the circumstances which initially justified the interference.

In the instant case, Benning had unsuccessfully searched appellant on April 27; however, that search did not extend to appellant's locker or vehicle. On May 5, Benning detained appellant to ascertain whether appellant was "skipping school." For reasons of safety, Benning "patted down" appellant but found no contraband or weap-

on. Then Benning, based on information received prior to the search of appellant on April 27, 1989, systematically searched appellant's clothing and person, locker, and vehicle.

We believe the first prong of *T.L.O.* is met. Benning had reasonable grounds to suspect that appellant was violating school rules by "skipping." Therefore, Benning had reasonable grounds to investigate why appellant was attempting to leave school and was justified in "patting down" appellant for safety reasons. However, the subsequent searches violated the second prong of *T.L.O.* The searches were not reasonably related in scope to the circumstances which initially justified Benning's interference with appellant, i.e., Benning's suspicion of appellant's skipping school. Nor were the searches reasonably related to any discovery from the initial "pat down." Rather, the post "pat down" searches of appellant's clothing and person, locker, and vehicle were excessively intrusive in light of the infraction of attempting to skip school. Additionally, nothing observed during the patdown or subsequent search of appellant's clothes and person, or locker, would justify Benning's expansion of the search to appellant's vehicle.

The courts of appeals have interpreted *T.L.O.* on two separate occasions. *See, Irby v. State,* 751 S.W.2d 670 (Tex.App.—Eastland 1988), *and, Coffman v. State,* 782 S.W.2d 249 (Tex.App.—Houston [14th Dist.] 1989). Both are distinguishable from the instant case. *Irby* involved a teacher who overheard a conversation concerning a student who had marijuana at school. The teacher sent the student who had the marijuana to the principal who ascertained that the student obtained the marijuana from another student. The principal told the "supplying" student that the principal "had reason to believe that he had some marihuana on him." *Id.,* 751 S.W.2d at 671. The supplier consented to a search and the principal found marijuana in the lining of the student's coat.

In *Coffman,* the student ignored the principal's inquiry about why the student was not in class. As the principal continued to question the student, the student clutched a book bag, continued walking away, and became "excited and aggressive." *Coffman,* 782 S.W.2d at 250. After questioning the student, the principal became suspicious about possible criminal activity and asked the student to open the bag. The principal took the bag but the student tried to leave and then lunged at the principal to reclaim the bag. Upon inspection of the bag, the principal found a pistol. *Id.*

The courts of appeals found that the school officials in *Irby* and *Coffman* had reasonable grounds for suspecting that their searches would produce evidence that the students were violating school rules. Additionally, the searches were reasonable and not excessively intrusive in light of the nature of the infraction. Moreover, in *Coffman,* the court of appeals noted that after discovering the contraband, the school official "did not attempt to search appellant's person or the remaining contents of the book bag. Instead, he ceased the search and contacted the police[.]" *Coffman,* 782 S.W.2d at 251.

The initial stop, questioning, and ensuing searches in *Irby* and *Coffman* followed a logical progression that led to the discovery of contraband. However, we find no connection whatsoever between Benning's original stop of appellant to determine whether appellant was skipping school, and the unproductive, progressively intrusive searches culminating in the search of appellant's vehicle. In other words, the search of appellant's vehicle was not reasonably related in scope to the circumstances which justified Benning's initial interference with appellant which was to determine whether appellant was skipping school. Indeed, the search of appellant's vehicle was excessively intrusive in light of the infraction of attempting to skip school. Therefore, the evidence was obtained in violation of the Fourth Amendment and should have been suppressed pursuant to Tex.Code Crim.Proc.Ann. art. 38.23(a). Accordingly, we reverse the judgment of the

Court of Appeals and remand the case to the trial court.

McCORMICK, P.J., and WHITE and BENAVIDES, JJ., concur in the result.