# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===

## NO. 03-07-00106-CV

===

## In the Matter of B. R. P.

===

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
## NO. J-26,460, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

===

## M E M O R A N D U M   O P I N I O N

The district court adjudicated B.R.P. delinquent after B.R.P. pleaded true to the offense of possessing marihuana in a drug-free zone. *See* Tex. Health & Safety Code Ann. § 481.121 (West 2003), § 481.134 (West Supp. 2006). Punishment was assessed at six months' probation. In a single issue on appeal, B.R.P. asserts that the district court erred in denying his motion to suppress. We affirm the judgment.

## BACKGROUND

In the hearing on B.R.P.'s motion to suppress, the district court heard evidence that on October 31, 2006, Ty Davidson, Assistant Principal of the Austin Independent School District's Crockett High School, received information that B.R.P. was selling and buying drugs. When asked about "the nature of that tip," Davidson explained:

> I was speaking to [another] student about his own problems with drugs. And he mentioned to me that every morning all I had to do was go to a certain bathroom, and I would see [B.R.P.] and a fellow student exchanging drugs, whether it was [B.R.P.]

selling it or [B.R.P.] buying it.

The following day, Davidson ran into B.R.P. in the school's hallway. Davidson testified that "[t]he bell had already rung" and that "[t]he students were supposed to be in class." In fact, according to Davidson, B.R.P. was "30 to 45 minutes late." Davidson explained that he had "a relationship with [B.R.P.] for over a year now," so he decided to bring B.R.P. into his office to ask him how he was doing and why he was late. However, when Davidson asked B.R.P. to come with him, B.R.P. appeared "nervous" and immediately claimed that he needed to go to the restroom. Davidson told him that he could not go, but B.R.P. asked again, stating "that he really needed to go." Davidson told B.R.P. that he could go to the restroom later and insisted that B.R.P. come with him. Davidson found this behavior suspicious because B.R.P. had been cooperative in their previous encounters.

At this point, based on B.R.P.'s behavior and Davidson's "history" with B.R.P., which included Davidson's knowledge that B.R.P. had been "busted with marijuana before,"[1] Davidson decided to search B.R.P. for drugs. Davidson escorted B.R.P. to an empty conference room and, in accordance with school policy, summoned David Wilson, an Austin Police Department officer assigned to Crockett, to observe the search. Once Officer Wilson arrived at the conference room, Davidson performed the search, asking B.R.P. to empty everything out of his pockets. B.R.P. removed from his pockets some dice, his wallet, and an inhaler. Davidson then proceeded to search B.R.P.'s pockets, neck, waistline, ankles, shoes, and possessions. The last thing Davidson examined

---

[1] In February 2006, B.R.P. had previously been adjudged delinquent based on evidence of marihuana possession. The judgment of delinquency was included in the clerk's record.

2

was the inhaler. Davidson pulled off the cap, looked inside, and found a "green substance" inside a "clear baggy" and a partially smoked cigarette. Officer Wilson recognized the substance as marihuana. Consequently, Wilson took B.R.P. into custody and processed the evidence. Both the green substance and the substance in the cigarette later tested positive for marihuana.

On November 9, 2006, the State filed a petition alleging that B.R.P. had engaged in delinquent conduct. In response, B.R.P. filed a motion to determine the admissibility of evidence. Following a hearing on the motion, the district court ruled that the evidence was admissible and proceeded to adjudication. B.R.P. pleaded true to the allegations against him and was adjudged delinquent. The district court sentenced him to six months' probation. This appeal followed.

## DISCUSSION

In his sole issue on appeal, B.R.P. contends that the district court erred in denying his motion to suppress because the search conducted by Davidson was not justified at its inception or, in the alternative, was not reasonably related in scope to the circumstances that had justified the original interference.

**Standard of review**

A trial court's ruling on a motion to suppress lies within the sound discretion of that court. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *In re K.C.B.*, 141 S.W.3d 303, 305 (Tex. App.—Austin 2004, no pet.). The trial court is the sole trier of fact and judge of the weight and credibility to be given to a witness's testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); *K.C.B.* 141 S.W.3d at 305. Therefore, we give almost

3

total deference to a trial judge's determination of facts and questions of "mixed law and fact" that turn on an evaluation of witness credibility and demeanor. *K.C.B.*, 141 S.W.3d at 305; *In re V.P.*, 55 S.W.3d 25, 30-31 (Tex. App.—Austin 2001, pet. denied). All other "mixed questions" and pure questions of law we review de novo. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *In re L.M.*, 993 S.W.2d 276, 286 (Tex. App.—Austin 1999, pet. denied). In this case, because the facts are undisputed, we review the district court's ruling de novo. *See K.C.B.*, 141 S.W.3d at 305.

In searches of students conducted by public school officials, the standard of suspicion necessary to comport with the Fourth Amendment is reasonable suspicion, not probable cause. *New Jersey v. T.L.O.*, 469 U.S. 325, 340-41 (1986). The test to determine whether the facts support "reasonable suspicion" dictates that we look at (1) whether the action was justified at its inception and (2) whether the search as actually conducted was reasonably related in scope to the circumstances that justified the original interference. *K.C.B.*, 141 S.W.3d at 306. B.R.P. argues that the search in this case fails both prongs of this test.

**Justification for the search**

"Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, 469 U.S. at 341-42. B.R.P. argues that the search was not justified because it was based on an "uncorroborated anonymous tip" and that there were no reasonable grounds for suspecting that B.R.P. possessed marihuana. The State responds that the tip was not anonymous and, furthermore, that the search was based on B.R.P.'s suspicious behavior.

4

This Court has previously held that an anonymous tip, standing alone, will rarely provide the reasonable suspicion necessary to justify an investigative detention or search. *See K.C.B.*, 141 S.W.3d at 307; *In re A.T.H.*, 106 S.W.3d 338, 344 (Tex. App.—Austin 2003, no pet.). However, both of these cases are distinguishable from the facts here. The tip in *A.T.H.* was received over the telephone from a caller who refused to provide his name. 106 S.W.3d at 341-42. In *K.C.B.*, the holding was predicated on a joint stipulation that the tip was truly anonymous. 141 S.W.3d at 307. However, the Court added that if the tip had been provided by an unidentified "known student," "there might be an added indicia of reliability, thus allowing [the school official] to rely upon the tip." *Id.*

In this case, Davidson testified that a "student came in [to his office] who was on another infraction." Although Davidson did not explicitly identify the student in court, the district court could have reasonably inferred that Davidson knew the identity of the student. The student was in Davidson's office on "another infraction," and, Davidson added, "I was speaking to the student about his own problem with drugs." Furthermore, the student was speaking to Davidson face-to-face, not over the telephone as in *A.T.H.* Texas courts have distinguished between anonymous telephone informants and informants who personally approach officers. *See, e.g.*, *State v. Garcia*, 25 S.W.3d 908, 913 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.—Fort Worth 1995, pet. ref'd). "Unlike a person who makes an anonymous telephone call, an individual presenting himself to the officer in person . . . puts himself in a position to be held accountable for his intervention; thus, the reliability of the information he provides is increased." *Garcia*, 25 S.W.3d at 913. No accountability concerns are present in this

5

case, as the student informant, whose identity was known to Davidson, could have been held responsible if the information he provided turned out to be inaccurate. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000).

Furthermore, the tip contained "predictive information" that could be verified. *See State v. Fudge*, 42 S.W.3d 226, 239-40 (Tex. App.—Austin 2001, no pet.). The tip specifically mentioned B.R.P., another student, a particular bathroom, and a particular time of day. This sort of predictive information moves beyond "merely observable facts such as location or attire" and predicts certain events involving specific individuals. *See K.C.B.*, 141 S.W.3d at 307 (citing *J.L.*, 529 U.S. at 271-72). "Predictive information" and receiving an informant's information in-person have long been held to be sufficient indicia of reliability to warrant "reasonable suspicion." *See J.L.*, 529 U.S. at 271 (finding deficiency in anonymous tip because it lacked predictive information); *Adams v. Williams*, 407 U.S. 143, 146-47 (1972) (holding that informant whom officer personally knew provided "enough indicia of reliability" to create probable cause). Thus, this tip does not raise the same reliability concerns as the tips in *K.C.B.* and *A.T.H.*

Additionally, the tip in this case, unlike the tips in *A.T.H.* and *K.C.B.*, was not the only basis for the search. Davidson also relied on B.R.P.'s suspicious behavior in deciding to search B.R.P. B.R.P. argues that needing to go to the bathroom is not suspicious behavior. What was significant to Davidson, however, was the context of B.R.P.'s request. On cross-examination, Davidson explained:

> Q:     So basically is it fair to assume that you just performed the search based upon
>           your history of B.R.P. and not because of any other factors?

6

A:    I wouldn't say that. I would say suspicious behavior.

Q:    Of wanting to go to the bathroom; is that correct?

A:    Wanting to go to the bathroom after we wanted to talk. Usually when I do talk to [B.R.P.] he's pretty good. He follows me. I can calm him down, and we've had some really good conversations. There's been some bad ones in our history.

Q:    Other than wanting to go to the bathroom, he was pretty compliant?

A:    He was nervous.

In summary, Davidson had the following information prior to his search of B.R.P: (1) a tip from an informant whom Davidson knew and that had other sufficient indicia of reliability; (2) B.R.P.'s repeated requests to use the restroom immediately after Davidson asked B.R.P. to accompany Davidson to his office, in contrast to B.R.P.'s usual behavior of following Davidson to his office without incident; and (3) the fact that B.R.P. appeared "nervous" when he encountered Davidson. Considered in their totality, we conclude that these factors provide "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *T.L.O.*, 469 U.S. at 341-42. Therefore, the search was justified at its inception.

**Scope of the search**

B.R.P. also argues that the scope of the search was not reasonably related to the circumstances that justified the search at its inception. A search justified at its inception "will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the

7

infraction." *Id*. at 342. B.R.P. contends that the circumstance that justified the search at its inception was his tardiness to class. We disagree. Although Davidson testified that he *stopped* B.R.P. because he was "30 to 45 minutes" late to class, that was not the reason that he *searched* B.R.P. In fact, Davidson testified that the reason that he decided to search B.R.P. was B.R.P.'s suspicious behavior after Davidson asked B.R.P. to come with him to his office. It was at this point that Davidson suspected that B.R.P. may have been carrying drugs. Thus, suspected drug possession was the reason for the search, not tardiness to class.

Because the objective of Davidson's search was to ascertain whether B.R.P. possessed drugs, we conclude that the scope of the search was not "excessively intrusive in light of the age and sex of the student and the nature of the infraction." In *Coronado v. State*, 835 S.W.2d 636 (Tex. Crim. App. 1992), the case relied on by B.R.P., the principal pulled down the suspect's pants and subsequently searched both the suspect's locker and his car for drugs. *Id*. at 638. The court of criminal appeals held that the search was excessively intrusive, especially in light of the fact that the principal's stated justification for the search of the locker and car was that the suspect was "skipping school." *Id*. at 641. In contrast, the search in this case was reasonable in light of the justification for the search, suspected drug possession. B.R.P. was first asked to empty his pockets. Then, Davidson searched B.R.P.'s pockets, neck, waistline, ankles, shoes, and the possessions emptied from B.R.P.'s pockets. That was the extent of the search. Similar searches have been found reasonable by Texas courts. *See, e.g.*, *Coffman v. State*, 782 S.W.2d 249, 251 (Tex. App.—Houston [14th Dist.] 1989, no pet.); *Irby v. State*, 751 S.W.2d 670, 673 (Tex. App.—Eastland 1988, no pet). We hold that Davidson's search of B.R.P. was not excessively intrusive in light of the age and sex of B.R.P. and the nature of the infraction.

Because the search satisfied both prongs of the *T.L.O.* test, we conclude that the

district court did not err in denying B.R.P.'s motion to suppress.  We overrule B.R.P.'s sole issue on appeal.

**CONCLUSION**

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   August 23, 2007