

**NUMBER 13-14-00200-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellant,** |

**v.**

| | |
|---|---|
| **RHONDA ROMBS,** | **Appellees.** |

**On appeal from the County Court at Law No. 2
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Longoria
Memorandum Opinion by Justice Longoria**

The State brings this interlocutory appeal of the trial court's order granting appellee

Rhonda Rombs's ("Rombs") motion to suppress drugs found in a bag in her wallet during

a search of her purse.  *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw

through 2013 3d C.S.) (permitting the State to appeal a pretrial order granting a motion

to suppress).  We reverse the trial court's order granting the motion to suppress and remand to the trial court for proceedings consistent with this opinion.

## I. BACKGROUND

On July 7, 2012, Officer Chance Durbin of the Corpus Christi Police Department was patrolling the streets.  Durbin explained that during the patrol he observed a woman, later identified as Rombs, sitting outside of a Stripes store.  According to Officer Durbin, Rombs was crying; Officer Durbin approached Rhonda to investigate a potential disturbance because, as he testified, his "job is to be curious."  Officer Durbin testified that he asked Rombs why she was upset; Officer Durbin further testified that Rombs responded that she was having an argument with her mother and that she had just recently left her mother's house and walked to Stripes.

According to Durbin's testimony, he observed that Rombs's eyes were red and bloodshot and that Rombs slurred her words.  Officer Durbin testified that this led him to believe that Rombs was intoxicated.  Officer Durbin further testified that he asked Rombs if he could search her purse.  Officer Durbin claims that Rombs replied, "Go ahead. I don't mind."  While searching the purse, Officer Durbin found a woman's wallet secured with a button snap and a zipper.  Inside the wallet, Officer Durbin found a clear plastic bag with two and a half white pills inside.  Officer Durbin then performed the horizontal gaze nystagmus sobriety test on Rombs.  After Rombs failed the test, Officer Durbin placed Rombs under arrest.

The State charged Rombs by information with possession of a dangerous drug. See TEX. HEALTH & SAFETY CODE ANN. § 483.042 (West, Westlaw through 2013 3d C.S.) (making it illegal to carry certain drugs without a prescription, including Quetiapine

2

Fumarate, the white pills in Rombs's purse).  She then filed a motion to have the drugs suppressed as the products of an illegal search.  The trial court granted the motion.  The State timely filed notice of interlocutory appeal.

The State requested the trial court to file findings of fact and conclusions of law. The trial court submitted findings of fact, which have been summarized above, as well as conclusions of law, which we reproduce in full, below:

**Court's Findings of Fact and Conclusions of Law** [1]

1.  The court finds that the officer conducted the search of the purse *before* he concluded that appellee had been engaged or would be engaged in criminal activity.

2.  The court finds that there was nothing particular about appellee's purse that would lead the officer to believe that it had evidence of a crime in it.

3.  The court finds that the officer did not have a reasonable suspicion that there was evidence of a crime contained in the closed woman's wallet.

4.  The court finds that the closed woman's wallet was a separate closed container located in the purse.

5.  The court finds that the officer searched the purse and closed wallet *prior* to arresting appellee.

6.  The court finds that the search of appellee's purse occurred without a warrant.

7.  The court finds that the search of the closed woman's wallet contained within the purse occurred without a warrant.

8.  The court finds that the search of the closed woman's wallet was not pursuant to an inventory search under the police department's general policy.

9.  The court finds that the Corpus Christi Police Department does not have an established policy of going into closed containers.

---

[1] We added numbers to the following paragraphs for easier reading.

10. The court finds that the officer did not ask for consent and obtain consent from appellee to open and search the closed woman's wallet contained within the purse.

11. The court finds that the search of the zippered compartment sealed further by a snap of the woman's wallet exceeded the scope of the consent given.

12. The court finds that it was not reasonable to search the closed woman's wallet for weapons because the wallet was not capable of holding a weapon. There were reasonable alternatives such as touching it and feeling for weapons.

13. The court finds that no exigent circumstances existed to authorize the search of the closed woman's wallet.

14. The court finds that the search of the closed woman's wallet was a violation of appellee's right and expectation of privacy.

15. The court finds that the search of the closed woman's wallet was unreasonable under the facts and totality of the circumstances.

The State appealed, contending that the trial court erred in granting Rombs's motion to suppress and, more specifically, in concluding that Officer Durbin did not have consent to search the wallet. The State contends that Rombs gave consent to search her wallet when she gave general consent to search her purse. Rombs responds that within the context of her encounter with Officer Durbin, it was not reasonable to expect her consent to search her purse to extend to a search of the wallet.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost complete deference to a trial court's findings of facts but we review de novo mixed questions of law and fact that do not depend on credibility or demeanor. *Id.* But we

4

generally uphold the trial court's findings if they are "supported by the record." *Miller v. State*, 393 S.W.3d 255, 262 (Tex. Crim. App. 2012).

The guiding principle of the Fourth Amendment is reasonableness. *Katz* v. *United States,* 389 U. S. 347, 360 (1967). The Fourth Amendment does not prohibit all police searches; it merely prohibits unreasonable searches. *Illinois* v. *Rodriguez,* 497 U. S. 177 (1990). Reasonableness under the Fourth Amendment usually requires the officer to seek a judicially-issued search warrant. *Riley v. California*, 573 U. S. ___, 134 S. Ct. 2473, 2482 (2014). Absent a search warrant, a search is reasonable "only if it falls within a specific exception to the warrant requirement." *Id.* Only a handful of exceptions to the warrant requirement exist: a search incident to a lawful arrest, the automobile exception, the plain view exception, the stop and frisk (*Terry* stop) exception, the hot pursuit exception, and the consent exception. See *Terry v. Ohio*, 392 U.S. 1 (1968); *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003); *Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.). When consent is present, the legal analysis is different; "the probable cause and warrant requirements of the Fourth Amendment are not applicable where a party consents to a search." *United States v. Melgar*, 227 F.3d 1038, 1041 (7th Cir. 2000); *see also Hernandez v. State*, 190 S.W.3d 856, 862 (Tex. App.—Corpus Christi 2006, no pet.) (holding that "constitutional prohibitions . . . do not come into play when a person gives free and voluntary consent to search."). Courts have long approved consensual searches because "it is no doubt reasonable" for the police to perform a search if the citizen to be searched voluntarily gives permission. *Schneckloth* v. *Bustamonte,* 412 U. S. 218, 219 (1973); *see also Harrison v. State*, 205 S.W.3d 549,

552 (Tex. Crim. App. 2006) ("A search made after voluntary consent is not unreasonable.").

Generally speaking, a search is defined by its expressed object. *United States* v. *Ross,* 456 U.S. 798 (1982). However, the standard for measuring the scope of a search pursuant to consent is that "of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 248 (1991); *accord Rodriguez,* 497 U.S. at 177; *Florida* v. *Royer,* 460 U. S. 491, 501–502 (1983) (plurality op.). Objective reasonableness is a question of law reviewed de novo. *See United States v. Stewart*, 93 F.3d 189, 192 (5th Cir. 1996); *United States v. Rich*, 992 F.2d 502, 505 (5th Cir. 1993). This is a straightforward test that ignores the subjective intent of both the officer and citizen and solely analyzes what a reasonable person would believe the consent to include. *Id.*

In *Jimeno,* a police officer stopped Jimeno's car for a traffic violation. 500 U.S. at 249. The officer then told Jimeno he had reason to believe that Jimeno was also in possession of illegal drugs due to what the officer had observed before Jimeno entered the vehicle. *Id.* Jimeno gave consent after the officer asked to search the car. The officer found a folded, brown paper bag on the floor. The officer picked up the bag, opened it, and found a kilogram of cocaine inside. *Id.* The defendant filed a motion to suppress the cocaine on the basis that searching inside the brown bag exceeded the scope of the consent that Jimeno gave to search the car. *Id.* In other words, Jimeno argued that the officer was required to seek additional permission to open the brown bag inside of the car. *Id.* at 252.

6

The Supreme Court rejected that argument, seeing "no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness." *Id*. Once the officer received permission to search the vehicle, it was objectively reasonable for the officer to believe that he had permission to search any containers found within the vehicle. *Id*. at 249. Citizens can, of course, limit the scope of their consent. *Id*. But as the court stated in *United States v. Battista*, it is an "unrealistic restriction" for officers to play "Mother-may-I" when conducting searches, seeking consent to move or open every container. 876 F.2d 201 (D.C. Cir. 1989) (holding that general consent to search luggage gave officers consent to search, and open, smaller containers inside the luggage). Other cases have further explored the scope of consent when officers state no purpose for conducting a search.

In *United States v. Mendoza-Gonzalez*, police officers stopped the defendants' vehicle because the officers suspected that the defendants were transporting illegal aliens. 318 F.3d 663, 664 (5th Cir. 2003). Without mentioning their suspicions, however, the officers simply asked, "Well, can we take a look?" *Id*. The officers then discovered boxes containing illegal drugs. *Id*. The defendants argued that the police officers exceeded the scope of consent given and that they only gave consent to search the vehicle for illegal aliens. *Id.* at 667. Furthermore, since aliens could not be hiding in boxes, the defendants contended, the officer had no reason, or consent, to search the boxes. *Id.* However, the court concluded:

> The agents never voiced their suspicion that Mendoza was smuggling aliens, but rather asked a series of questions that would lead a reasonable observer to believe that they were interested in the contents of the truck *generally*. Considering the conversations in toto*, an objective, specifically that of confirming the absence of people, was not sufficiently delineated by

7

the agents when they sought consent to constrain them in their search. Mendoza gave *general consent* to a *general request* to search the trailer.

*Id.* at 669 (emphasis added). Furthermore, the court held that asking to "take a look" is the same as a request for general consent to search. *Id.*

In *United States v. Snow*, the court concluded that "an individual who consents to a search of his car should reasonably expect that readily-opened, closed containers discovered inside the car will be opened and examined." 44 F.3d 133, 135 (2d Cir. 1995). Furthermore, the fact that the officers did not mention what they were searching for made no impact on the court's analysis:

> That the defendant did not—and probably could not—know what the officer was looking for does not change our view of his consent. *It is self-evident that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity.* It is just as obvious that such evidence might be hidden in closed containers. *If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way.*

*Id.* at 135 (emphasis added); s*ee also Lemons v. State*, 298 S.W.3d 658, 661 (Tex. App.—Tyler 2009, pet. ref'd) (holding that if a defendant knows that there are unlocked containers in a car, the defendant should limit search to the car but not the containers).

### III. DISCUSSION

We are asked to resolve a single issue in this case: did Officer Durbin have consent to search the wallet inside of the purse? We conclude that under the applicable test, a reasonable person would expect that if given general consent to search through a purse, without any limitations, the officer has consent to search any readily-opened, smaller containers inside that purse.[2]

---

[2] The only issue we address in this case is the scope of consent. We note that in its conclusions of law, the trial court found that Officer Durbin's search of the purse failed to meet several different Constitutional tests for a search, such as having a valid warrant or meeting one of the exceptions to the

Applying *Jimeno* leads us to conclude that consent to search one's purse gives implied consent to open any smaller objects inside. 500 U.S. at 249. However, Rombs argues that given the context of the search, a general welfare check, Officer Durbin needed additional permission to open the wallet even though he had consent to search the purse. Rombs cites *United States v. Mendoza-Gonzalez* for this proposition, which correctly states that the factual circumstances are "highly relevant" in deciding what a reasonable person would have understood by the given consent. 318 F.3d at 667. Rombs also cites *Coronado v. State* to support her claim that Officer Durbin exceeded the scope of consent because wallets have a "high expectation of privacy." 835 S.W.2d 636, 640 (Tex. Crim. App. 1992) (en banc). Rombs further contends that when a citizen gives an officer general consent to search an object, this does not give the officer carte blanche authority to search everywhere for anything.

We agree with Rombs to the extent that Officer Durbin did not have carte blanche authority to search her person, vehicle, or home. He had consent to search the purse only. We also agree that the scope of the consent is determined by the factual circumstances surrounding the consent. *See Mendoza-Gonzalez,* 318 F.3d at 667. However, we conclude that a reasonable person would believe that Officer Durbin had Rombs's consent to search all readily-opened, closed containers in the purse.

Officer Durbin asked to "take a look" through Rombs's purse; this is the equivalent as asking for general consent to search. *See id.* Furthermore, Officer Durbin never said anything to indicate what he was looking for. We conclude that no specific objective was

warrant requirement (see points 1-3, 5-9, 12, and 13 of the trial court's conclusions of law). However, these inquiries are irrelevant. Only one exception to the warrant requirement need be found. And since consent is admitted by both parties, there is no need to explore other exceptions. Number 11 on the list is really the only conclusion being challenged, which we now review de novo. *Stewart*, 93 F.3d at 192.

delineated by Officer Durbin; Officer Durbin merely asked for general permission to search Rombs's purse. It is "self-evident" that a police officer asking general permission to search a purse is looking for illegal activity. *See Snow*, 44 F.3d at 135. One who generally consents to the search of her (or his) purse should reasonably expect that readily-opened, closed containers discovered inside the purse will be opened and examined. *See id.*

Having both a snap and a zipper does not exclude the wallet from Rombs's general permission to search her purse. Rombs cites *State v. Wells*, a case where the Florida Supreme Court held that the officers did not have consent to break open a locked briefcase found in the trunk of a car when they only had general permission to search the car. 539 So.2d 464, 465 (Fla. 1989). Having an ordinary wallet with a button and zipper does not rise to the same level as having a secured briefcase that can only be opened with a key or combination. Anybody finding the wallet could peek inside at its contents without destroying it. Rombs's wallet is easily classified as a "readily-opened, closed container" that reasonable people would expect to be searched. See *Snow*, 44 F.3d at 135.

And the wallet does not fall outside of the consent just because people have a "high expectation of privacy" in their wallets. *Coronado*, 835 S.W.2d at 640. Personal items only have a high expectation of privacy from unreasonable searches and seizures. *Id.* But as we discussed earlier, searches pursuant to consent are reasonable. *Harrison*, 205 S.W.3d at 552. Even items with the highest expectations of privacy are not protected against reasonable searches. Thus, by giving consent to have an item searched,

appellee waived her expectations of privacy as to that item.  See *Schneckloth,* 412 U.S. at 219.

The wallet was within the scope of consent that Rombs gave to Officer Durbin when he asked to look through her purse.  We therefore conclude that the trial court erred in granting the motion to suppress.

## IV. CONCLUSION

We reverse the trial court's order granting the motion to suppress and remand to the trial court for further proceedings in accordance with this opinion.


NORA LONGORIA,
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of June, 2015.

11